# CURTISS-WRIGHT CORP. *v.* GENERAL ELECTRIC CO.

No. 79–105.   Argued January 14, 1980—Decided April 22, 1980

BURGER, C. J., delivered the opinion for a unanimous Court.

*Ralph N. Del Deo* argued the cause for petitioner. With him on the briefs were *Richard S. Zackin, David Lasky,* and *Alfred J. Kovell.*

*Isaac N. Groner* argued the cause for respondent. With him on the brief were *Walter H. Fleischer, Alfred F. Belcuore,* and *Albert G. Besser.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

Federal Rule of Civil Procedure 54 (b) allows a district court dealing with multiple claims or multiple parties to direct the entry of final judgment as to fewer than all of the claims or parties; to do so, the court must make an express determination that there is no just reason for delay. We granted certiorari in order to examine the use of this procedural device. 444 U. S. 823 (1979).

I

From 1968 to 1972, respondent General Electric Co. entered into a series of 21 contracts with petitioner Curtiss-Wright Corp. for the manufacture of components designed for use in nuclear powered naval vessels. These contracts had a total value of $215 million.

In 1976, Curtiss-Wright brought a diversity action in the United States District Court for the District of New Jersey, seeking damages and reformation with regard to the 21 contracts. The complaint asserted claims based on alleged fraud,

misrepresentation, and breach of contract by General Electric. It also sought $19 million from General Electric on the outstanding balance due on the contracts already performed.

General Electric counterclaimed for $1.9 million in costs allegedly incurred as the result of "extraordinary efforts" provided to Curtiss-Wright during performance of the contracts which enabled Curtiss-Wright to avoid a contract default. General Electric also sought, by way of counterclaim, to recover $52 million by which Curtiss-Wright was allegedly unjustly enriched as a result of these "extraordinary efforts."

The facts underlying most of these claims and counterclaims are in dispute. As to Curtiss-Wright's claims for the $19 million balance due, however, the sole dispute concerns the application of a release clause contained in each of the 21 agreements, which states that "Seller . . . agree[s] as a condition precedent to final payment, that the Buyer and the Government . . . are released from all liabilities, obligations and claims arising under or by virtue of this order." App. 103a. When Curtiss-Wright moved for summary judgment on the balance due, General Electric contended that so long as Curtiss-Wright's other claims remained pending, this provision constituted a bar to recovery of the undisputed balance.

The District Court rejected this contention and granted summary judgment for Curtiss-Wright on this otherwise undisputed claim. Applying New York law by which the parties had agreed to be bound, the District Court held that Curtiss-Wright was entitled to payment of the balance due notwithstanding the release clause. The court also ruled that Curtiss-Wright was entitled to prejudgment interest at the New York statutory rate of 6% per annum.

Curtiss-Wright then moved for a certification of the District Court's orders as final judgments under Federal Rule of Civil Procedure 54 (b),[1] which provides:

"When more than one claim for relief is presented in an

---

[1] This was the second motion by Curtiss-Wright for Rule 54 (b) cer-

action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

The court expressly directed entry of final judgment for Curtiss-Wright and made the determination that there was "no just reason for delay" pursuant to Rule 54 (b).

The District Court also provided a written statement of reasons supporting its decision to certify the judgment as final. It acknowledged that Rule 54 (b) certification was not to be granted as a matter of course, and that this remedy should be reserved for the infrequent harsh case because of the overload in appellate courts which would otherwise result from appeals of an interlocutory nature. The essential inquiry was stated to be "whether, after balancing the competing factors, finality of judgment should be ordered to advance the interests of sound judicial administration and justice to the litigants."

The District Court then went on to identify the relevant factors in the case before it. It found that certification would not result in unnecessary appellate review; that the claims

tification. An earlier motion was denied by the District Court because at that time the matter of prejudgment interest had not yet been resolved.

finally adjudicated were separate, distinct, and independent of any of the other claims or counterclaims involved; that review of these adjudicated claims would not be mooted by any future developments in the case; and that the nature of the claims was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

Turning to considerations of justice to the litigants, the District Court found that Curtiss-Wright would suffer severe daily financial loss from nonpayment of the $19 million judgment because current interest rates were higher than the statutory prejudgment rate, a situation compounded by the large amount of money involved. The court observed that the complex nature of the remaining claims could, without certification, mean a delay that "would span many months, if not years."

The court found that solvency of the parties was not a significant factor, since each appeared to be financially sound. Although the presence of General Electric's counterclaims and the consequent possibility of a setoff recovery were factors which weighed against certification, the court, in balancing these factors, determined that they were outweighed by the other factors in the case. Accordingly, it granted Rule 54 (b) certification. It also granted General Electric's motion for a stay without bond pending appeal.

A divided panel of the United States Court of Appeals for the Third Circuit held that the case was controlled by its decision in *Allis-Chalmers Corp.* v. *Philadelphia Electric Co.,* 521 F. 2d 360 (1975), where the court had stated:

> "In the absence of unusual or harsh circumstances, we believe that the presence of a counterclaim, which could result in a set-off against any amounts due and owing to the plaintiff, weighs heavily against the grant of 54 (b) certification." *Id.,* at 366 (footnote omitted).

In *Allis-Chalmers,* the court defined unusual or harsh cir-

cumstances as those factors "involving considerations of solvency, economic duress, etc." *Id.*, at 366, n. 14.

In the Third Circuit's view, the question was which of the parties should have the benefit of the amount of the balance due pending final resolution of the litigation. The court held that *Allis-Chalmers* dictated "that the matter remain in status quo when non-frivolous counterclaims are pending, and in the absence of unusual or harsh circumstances." 597 F. 2d 35, 36 (1979) (*per curiam*). The Court of Appeals acknowledged that Curtiss-Wright's inability to have use of the money from the judgment might seem harsh, but noted that the same could be said for General Electric if it were forced to pay Curtiss-Wright now but later prevailed on its counterclaims. *Ibid.*

The Court of Appeals concluded that the District Court had abused its discretion by granting Rule 54 (b) certification in this situation and dismissed the case for want of an appealable order; it also directed the District Court to vacate its Rule 54 (b) determination of finality. Curtiss-Wright's petition for rehearing and suggestion for rehearing en banc were denied. 599 F. 2d 1259 (1979). Four judges dissented from that denial, observing that the case was in conflict with *United Bank of Pueblo* v. *Hartford Accident & Indemnity Co.*, 529 F. 2d 490 (CA10 1976). We reverse.

## II

Nearly a quarter of a century ago, in *Sears, Roebuck & Co.* v. *Mackey*, 351 U. S. 427 (1956), this Court outlined the steps to be followed in making determinations under Rule 54 (b). A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." 351 U. S., at 436.

Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." *Id.*, at 435. It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. *Ibid.* This discretion is to be exercised "in the interest of sound judicial administration." *Id.*, at 437.

Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." *Id.*, at 438. It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.[2]

Here the District Judge saw no sound reason to delay appellate resolution of the undisputed claims already adjudicated. The contrary conclusion of the Court of Appeals was strongly

---

[2] We do not suggest that the presence of one of these factors would necessarily mean that Rule 54 (b) certification would be improper. It would, however, require the district court to find a sufficiently important reason for nonetheless granting certification. For example, if the district court concluded that there was a possibility that an appellate court would have to face the same issues on a subsequent appeal, this might perhaps be offset by a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims. See *Cold Metal Process Co.* v. *United Engineering & Foundry Co.*, 351 U. S. 445, 450, n. 5 (1956).

influenced by the existence of nonfrivolous counterclaims. The mere presence of such claims, however, does not render a Rule 54 (b) certification inappropriate. If it did, Rule 54 (b) would lose much of its utility. In *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U. S. 445 (1956), this Court explained that counterclaims, whether compulsory or permissive, present no special problems for Rule 54 (b) determinations; counterclaims are not to be evaluated differently from other claims. 351 U. S., at 452. Like other claims, their significance for Rule 54 (b) purposes turns on their interrelationship with the claims on which certification is sought. Here, the District Judge determined that General Electric's counterclaims were severable from the claims which had been determined in terms of both the factual and the legal issues involved. The Court of Appeals did not conclude otherwise.

What the Court of Appeals found objectionable about the District Judge's exercise of discretion was the assessment of the equities involved. The Court of Appeals concluded that the possibility of a setoff required that the status quo be maintained unless petitioner could show harsh or unusual circumstances; it held that such a showing had not been made in the District Court.

This holding reflects a misinterpretation of the standard of review for Rule 54 (b) certifications and a misperception of the appellate function in such cases. The Court of Appeals relied on a statement of the Advisory Committee on the Rules of Civil Procedure, and its error derives from reading a description in the commentary as a standard of construction. When Rule 54 (b) was amended in 1946, the Notes of the Advisory Committee which accompanied the suggested amendment indicated that the entire lawsuit was generally the appropriate unit for appellate review, "and that this rule needed only the exercise of a discretionary power to afford a remedy in the infrequent harsh case to provide a simple, definite, workable rule." 28 U. S. C. App., p. 484; 5 F. R. D. 433, 473 (1946).

However accurate it may be as a description of cases qualifying for Rule 54 (b) treatment, the phrase "infrequent harsh case" in isolation is neither workable nor entirely reliable as a benchmark for appellate review. There is no indication it was ever intended by the drafters to function as such.

In *Sears,* the Court stated that the decision to certify was with good reason left to the sound judicial discretion of the district court. At the same time, the Court noted that "[w]ith equally good reason, any *abuse* of that discretion remains reviewable by the Court of Appeals." 351 U. S., at 437 (emphasis added). The Court indicated that the standard against which a district court's exercise of discretion is to be judged is the "interest of sound judicial administration." *Ibid.* Admittedly this presents issues not always easily resolved, but the proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record.

There are thus two aspects to the proper function of a reviewing court in Rule 54 (b) cases. The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." *Sears, supra,* at 437. The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable.

Plainly, sound judicial administration does not require that Rule 54 (b) requests be granted routinely. That is implicit in commending them to the sound discretion of a district court. Because this discretion "is, with good reason, vested by the rule primarily" in the district courts, *Sears, supra,* at 437, and because the number of possible situations is large, we are

reluctant either to fix or sanction narrow guidelines for the district courts to follow. We are satisfied, however, that on the record here the District Court's assessment of the equities was reasonable.

One of the equities which the District Judge considered was the difference between the statutory and market rates of interest. Respondent correctly points out that adjustment of the statutory prejudgment interest rate is a matter within the province of the legislature, but that fact does not make the existing differential irrelevant for Rule 54 (b) purposes. If the judgment is otherwise certifiable, the fact that a litigant who has successfully reduced his claim to judgment stands to lose money because of the difference in interest rates is surely not a "just reason for delay."

The difference between the prejudgment and market interest rates was not the only factor considered by the District Court. The court also noted that the debts in issue were liquidated and large, and that absent Rule 54 (b) certification they would not be paid for "many months, if not years" because the rest of the litigation could be expected to continue for that period of time. The District Judge had noted earlier in his opinion on the merits of the release clause issue that respondent General Electric contested neither the amount of the debt nor the fact that it must eventually be paid. App. 164a–172a. The only contest was over the effect of the release clause on the timing of the payment, an isolated and strictly legal issue on which summary judgment had been entered against respondent.

The question before the District Court thus came down to which of the parties should get the benefit of the difference between the prejudgment and market rates of interest on debts admittedly owing and adjudged to be due while unrelated claims were litigated. The central factor weighing in favor of General Electric was that its pending counterclaims created the possibility of a setoff against the amount it owed petitioner.

This possibility was surely not an insignificant factor, especially since the counterclaims had survived a motion to dismiss for failure to state a claim. *Id.*, at 173a–174a. But the District Court took this into account when it determined that both litigants appeared to be in financially sound condition, and that Curtiss-Wright would be able to satisfy a judgment on the counterclaims should any be entered.

The Court of Appeals concluded that this was not enough, and suggested that the presence of such factors as economic duress and insolvency would be necessary to qualify the judgment for Rule 54 (b) certification. 597 F. 2d, at 36. But if Curtiss-Wright were under a threat of insolvency, that factor alone would weigh *against* qualifying; that very threat would cast doubt upon Curtiss-Wright's capacity to produce all or part of the $19 million should General Electric prevail on some of its counterclaims. Such a showing would thus in fact be self-defeating.

Nor is General Electric's solvency a dispositive factor; if its financial position were such that a delay in entry of judgment on Curtiss-Wright's claims would impair Curtiss-Wright's ability to collect on the judgment, that would weigh in favor of certification. But the fact that General Electric is capable of paying either now or later is not a "just reason for delay." At most, as the District Court found, the fact that neither party is or will become insolvent renders that factor neutral in a proper weighing of the equities involved.

The question in cases such as this is likely to be close, but the task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case. As we have noted, that assessment merits substantial deference on review. Here, the District Court's assessment of the equities between the parties was based on an intimate knowledge of the case and is a reasonable one. The District Court having found no other reason justifying delay, we conclude that it did not abuse its discretion in

granting petitioner's motion for certification under Rule 54 (b).[3]

Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

---

[3] We note that Federal Rule of Civil Procedure 62 (h) allows a court certifying a judgment under Rule 54 (b) to stay its enforcement until the entering of a subsequent judgment or judgments. Rule 62 (h) also states that the court "may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered." Under this Rule, we assume it would be within the power of the District Court to protect all parties by having the losing party deposit the amount of the judgment with the court, directing the Clerk to purchase high yield government obligations and to hold them pending the outcome of the case. In this way, valid considerations of economic duress and solvency, which do not affect the juridical considerations involved in a Rule 54 (b) determination, can be provided for without preventing Rule 54 (b) certification.

In the instant case, after certifying the judgment as final under Rule 54 (b), the District Court granted respondent's motion for a stay of judgment without bond, but only pending resolution of the appeal.