BOWNE OF NEW YORK
CITY, INC., Plaintiff,

v.

AmBASE CORPORATION, Defendant,

Chemical Bank, Additional Defendant
on Counterclaims.

No. 92 Civ. 0053 (RLC).

United States District Court,
S.D. New York.

Jan. 26, 1995.

Anderson Kill Olick & Oshinsky, New York City (Anthony Princi, Leonard A. Cohen, of counsel), for plaintiffs.

Friedman, Wang, & Bleiberg, New York City (Peter N. Wang, Robert A. Scher, of counsel), for defendant AmBase Corp.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Bowne of New York City, Inc. ("Bowne") seeks an order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure determining that there is no just reason for delay and directing entry of a final judgment in favor of Bowne and against defendant AmBase Corporation ("AmBase") on Bowne's twentieth through twenty-third and twenty-eighth through thirty-first causes of action, on which partial summary judgment was previously granted.

### I.

Defendant AmBase hired plaintiff Bowne, a financial printer, to print, revise and mail eight sets of documents from late 1990 through mid–1991. AmBase has refused to pay for any of these jobs, claiming that Bowne was late in mailing one set of documents—AmBase's 1991 Notice of Special Meeting and Proxy Statement ("Notice of Special Meeting"). In 1992, Bowne brought an action against AmBase seeking payment for the eight printing jobs. AmBase counterclaimed against Bowne (and also against Chemical Bank, on the grounds that it is the successor-in-interest to AmBase's former transfer agent) for damages resulting from the alleged late mailing and for punitive damages. The essence of AmBase's claims is that the documents were not timely prepared and that consequently AmBase was forced to delay the sale of its subsidiary, thus losing a multimillion dollar tax benefit.

In May 1992, Bowne moved for partial summary judgment on twenty-eight of its thirty-one claims, relating to seven of the eight printing jobs. Bowne subsequently withdrew its motion with respect to two of the printing jobs, and Judge Leval, then of this court, denied its motion with respect to three other jobs. Of the remaining claims, causes of action twenty through twenty-three concern the printing of a Form 10–K, and causes of action twenty-eight through thirty-one concern the printing of AmBase's First Quarter Report. In an order dated April 15, 1993 (the "April Order"), Judge Leval allowed AmBase to supplement its submission regarding the Form 10–K and First Quarter Report jobs, and in an order dated January 19, 1994 (the "January Order"), Judge Leval granted Bowne partial summary judgment in the amount of $422,154.91 on its causes of action concerning the Form 10–K and First Quarter Report jobs (the "adjudicated claims"). This action for final judgment on the adjudicated claims followed, and when Judge Leval was appointed to the Court of Appeals for the Second Circuit, I inherited this case.

### II.

This court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332.

### III.

For Rule 54(b) to be applicable, "(1) multiple *claims* or multiple *parties* must be present, [and] (2) at least one claim, or the rights and liabilities of at least one party, must be

finally decided within the meaning of 28 U.S.C. § 1291." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992). The parties agree that both circumstances are present here. There are multiple claims involving the various printing jobs, and had the plaintiff filed its claims regarding the Form 10–K and First Quarter Report printing jobs as a separate action, Judge Leval's Partial Summary Judgement Order would have been final and separately appealable within the meaning of § 1291. *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 431, 76 S.Ct. 895, 897, 100 L.Ed. 1297 (1956).

## IV.

■ Although the Advisory Committee's comment to Rule 54(b) implied that the rule was originally intended to apply only to the "infrequent harsh case," the Second Circuit has ruled that with the advent of complex litigation involving numerous parties and claims this standard is no longer "workable." *Ginett*, 962 F.2d at 1094. Courts should not restrict the use of Rule 54(b) to cases which are " 'unusual', 'exceptional', or 'extraordinary' " but should instead be guided by the " 'interest of sound judicial administration.' " *Id.* at 1095 (quoting *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980)). Thus, district courts should consider the possibility that "the ultimate dispositions of the claims remaining … could either moot [the decision of the appellate court] on the appealed claim or require [the appellate court] to decide issues twice." *Id.*

■ In the interests of sound judicial administration, Rule 54(b) partial final judgment is appropriate where the claims involved are not "inherently inseparable" or "inextricably intertwined," although the remedy may be appropriate where the claims are merely "interrelated." *Id.* In this case, the court must assess the relationships between the adjudicated claims and Bowne's remaining claims, as well as the relationship between the adjudicated claims and AmBase's counterclaims. *See Curtiss–Wright*, 446 U.S. at 9, 100 S.Ct. at 1465 (significance of counterclaims, like other claims, depends on their relationship with claims for which certification is sought). In his April and January orders, Judge Leval found that the adjudicated claims and the remaining claims were sufficiently unrelated to merit the entry of partial summary judgment. With regard to the adjudicated claims, he found that AmBase "offer[ed] absolutely no legal or factual support for its contention that it is not obligated to pay for Bowne's work on the 'AmBase Form 10–K Documents' and the 'AmBase Form 10–Q Quarterly Documents' printing jobs because the parties were in a dispute about an earlier, *unrelated* print job." April Order at 6 (emphasis added). Although the standards for summary judgment and final judgment are different, Judge Leval's conclusions about the unrelatedness of the claims remain valid in the final judgment context.

The remaining claims regarding the six other printing jobs involved in this case are, for the purposes of the present analysis, quite separate from the claims regarding the Form 10–K and First Quarter Report printing jobs. For each of the eight printing jobs except the Notice of Special Meeting, Bowne raises claims of breach of contract, unjust enrichment, *quantum meruit* and account stated. For the Notice of Special Meeting job, Bowne raises claims of breach of contract, unjust enrichment, and *quantum meruit*. To decide these claims, the court will have to look at each print job individually and determine facts pertinent only to that job, such as the terms of the contract for each job, whether Bowne performed the job, and whether AmBase received the benefit of the job. The determination of these issues regarding the remaining print jobs will not moot or duplicate the determinations already made regarding the 10–K and First Quarter Report jobs.

Additionally, for the claims relating to each print job the court will have to rule on AmBase's contention that Bowne's alleged tardiness in preparing the Notice of Special Meeting job absolves AmBase of its responsibility to pay for the job. That inquiry will be directed to the individual facts of each print job and the unique relationship between that print job and the counterclaims, and thus a

decision regarding one will not moot a decision by the Court of Appeals in another or require the Court of Appeals to address issues already decided.

It is true that before the court can decide that the alleged tardiness had an impact on any of the claims related to a particular printing job, the court will have to decide whether there actually was impermissible tardiness. As AmBase states, later appeals of any of the remaining claims will require the Court of Appeals to "cover many of the same facts as an appeal of the Adjudicated Claims (including the hiring of Bowne to print the Special Meeting Documents and the [alleged] catastrophic failure by Bowne ... timely to print and mail those documents)." (Def.'s Mem.Opp. to Pl.'s Mot. for Rule 54(b) Certification at 6–7.) Since the adjudicated claims have no relationship to the alleged tardiness, however, there is no danger that a later decision regarding the existence or non-existence of tardiness in printing will moot a decision of the Court of Appeals regarding the adjudicated claims.

█ It is important to remember that although the same facts may be involved in several different appeals, the Court of Appeals will decide different issues regarding those facts in each appeal. In the context of deciding the relatedness of several other of the print jobs, Judge Leval observed that "[i]t may be that the print jobs at issue were related in that they were all connected to the same corporate project. This does not mean, however, that the legal claims arising from the print jobs are related." April Order at 4. In cases such as this, where different claims may be "in respect of or arising out of the same transaction, occurrence, or series of transactions and occurrences" they may be interrelated, but they are not necessarily inextricably intertwined. *Ginett*, 962 F.2d at 1095. AmBase has alleged no more than interrelatedness, which is not enough to defeat a motion for entry of partial final judgment.

## V.

█ A district court can order entry of a partial final judgment only where there is "no just reason for delay." Rule 54(b),

F.R.Civ.P. In making this assessment, the court can take into account whether delay would cause financial hardship to either party. In particular, the solvency of the judgment debtor is a relevant consideration. *Curtiss–Wright* at 12, 100 S.Ct. at 1467. *See, e.g., Log Plastic Prods. v. Robert Linkletter Assoc., Inc.*, No. 87 Civ. 3482, 1988 WL 68178 (S.D.N.Y. June 20, 1988) (Kram, J.) (ordering entry of partial final judgment where judgment debtor was in danger of becoming insolvent); *Lone Star Indus., Inc. v. Nelstad Material Corp.*, No. 92 Civ. 3040, 1993 WL 120376 (S.D.N.Y. April 14, 1993) (Broderick, J.) (ordering entry of partial final judgment where judgment debtor was insolvent). As of September 1993 (the date of the financial statements that were the most up-to-date at the time of the filing of this motion), AmBase's obligations exceeded its total assets by over $50 million, and AmBase had admitted in its the Form 10–Q Report filed with the Securities and Exchange Commission in October 1993 that it had "substantial doubt about the ability of the Company to continue as a going concern" and that it was "unable to predict whether the Company's recorded liabilities will be adequate or its resources sufficient to satisfy its ultimate obligations."

AmBase argues that it has been able to pay the ordinary costs of its business and that, although its long-term financial status is uncertain, it should not be considered insolvent. It offers a precedent in the area of contracts for the use of an "equity test" for insolvency which examines the ability of the company to pay its debts "in the ordinary course of business as the debts mature" rather than the "bankruptcy test" which "focuses on the balance sheet of a company at discreet intervals of time in order to determine whether the company's liabilities exceed its assets." *Vestron, Inc. v. Nat'l Geographic Soc'y*, 750 F.Supp. 586, 592, Mem. & Order of James C. Francis IV, Mag.J. (S.D.N.Y.1990) (quoting *Kreps v. C.I.R.*, 351 F.2d 1, 9 (2d Cir.1965)). AmBase appears to fail this test by its own admissions in its financial statement that it may not be able to continue operating and that it is unsure whether it will be able to satisfy its obligations. Furthermore, what matters is not AmBase's current

day-to-day financial health but rather the likelihood that it will be able to satisfy a judgment whenever the case ends. Bowne has demonstrated that this may well be impossible.

## VI.

 The one factor that AmBase has raised that weighs against entry of a partial final judgment is the fact that if AmBase's counterclaims for at least $20 million are successful they will more than offset the $422,154.91 owed by Bowne for the adjudicated claims. The possibility of offsets provides sufficient reason to deny entry of a partial final judgment. *Curtiss–Wright,* 446 U.S. at 11–12, 100 S.Ct. at 1466–67; *see also RWR Advertising, Inc. v. Lexis Pharmaceuticals, Inc.,* No. 88 Civ. 6032, 1990 WL 150467 at *1 (S.D.N.Y. Oct. 1, 1990) (Leval, J.). The possibility is no mere fantasy here—the counterclaims have survived a motion by Bowne for summary judgment. *See Curtiss–Wright,* 446 U.S. at 12, 100 S.Ct. at 1467. (where counterclaims survived motion to dismiss for failure to state a claim, they were "not an insignificant factor").

The Supreme Court has suggested that where Rule 54(b) certification is appropriate, courts can protect all parties against the uncertainties posed by the possibility of a large setoff and by the possibility of the insolvency of a judgment debtor by "having the losing party deposit the amount of the judgment with the court, [and] directing the Clerk to purchase high yield government obligations and to hold them pending the outcome of the case." *Curtiss–Wright,* 446 U.S. at 13 n. 3, 100 S.Ct. at 1467 n. 13. This course has been followed by several district courts in cases resembling this case, *see, e.g. Log Plastic Prods. v. Robert Linkletter Assoc., Inc.,* No. 87 Civ. 3482, 1988 WL 68178 (S.D.N.Y. June 20, 1988) (Kram, J.); *In re Bulldog Trucking, Inc. v. E.I. Du Pont de Nemours & Co.,* 173 B.R. 517 (W.D.N.C. 1994), and is appropriate in this case.

## VII.

Partial final judgment is entered in favor of Bowne on its twentieth through twenty-third and twenty-eighth through thirty-first causes of action pursuant to Rule 54(b), F.R.Civ.P. Judgment is stayed pursuant to Rule 62(h), F.R.Civ.P. pending entry of a judgment on AmBase's counterclaims. AmBase shall deposit a sum in the amount of $422,154.91 with the court. The parties shall submit within fourteen days an order on notice for the court's approval designating a high-interest-yielding account into which the clerk of court shall deposit the funds.

**IT IS SO ORDERED.**