**GLAXO INC., Glaxo Group Limited and Allen and Hanburys Limited, Plaintiffs,**

v.

**BOEHRINGER INGELHEIM CORPORATION and Boehringer Ingelheim Chemicals, Inc., Defendants.**

**No. 3:95–CV–1342 (GLG).**

United States District Court,
D. Connecticut.

Jan. 30, 1997.

Martin B. Pavane, Michael C. Stuart, Cohen, Pontani, Lieberman & Pavane, New York City,.for Defendants.

Dennis J. Mondolino, Lynne A. Borchers, Hopgood, Calimafde, Kalil & Judlowe, New York City (John C. Yavis, Jr., Michael J.

Donnelly, Murtha, Cullins, Ritcher & Pinney, Hartford, CT, of counsel), for Plaintiffs.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Defendants move, pursuant to Fed. R.Civ.P. 54(b), for certification of this Court's orders of October 7, 1996 and November 18, 1996 granting motions for partial summary judgment, to have them entered as a final judgment. Since this case has been the subject of not only the earlier decisions referred to but also those rendered on other motions, no extensive statement of the facts is necessary.

The plaintiffs own U.S. Patent No. 4,128,-658 (the "'658 Patent") which makes claim for various chemical formulas including ranitidine in what is referred to as "Form 1." That patent was issued on December 5, 1978 and would have expired on December 5, 1995 except for the Uruguay round extension of the patent by nineteen months to July 25, 1997. *See* 35 U.S.C. § 154(c)(1).

Plaintiffs also own two additional patents which cover what is known as Form 2 of ranitidine hydrochloride. It is presently being marketed under the brand name Zantac for the treatment of ulcers, hiatal hernia and other stomach upsets. It is one of the most valuable chemical patents in the world producing revenues each year of over a billion dollars. Those patents will not expire until after the turn of the century.

On April 28, 1995 the defendant Boehringer filed an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration seeking approval to market a Form 1 ranitidine hydrochloride product. Boehringer's ANDA seeks approval to commence marketing the product on July 25, 1997 when the basic ranitidine patent, the '658 patent, expires.

On July 7, 1995 the plaintiffs brought this lawsuit charging defendants with infringement of the basic '658 patent as well as the two patents covering Form 2 ranitidine. Pursuant to the provisions of the Hatch–Waxman Act, the mere filing of this complaint automatically prevents the defendants from obtaining approval of its ANDA for Form 1 ranitidine for thirty months or until the action and any appeal taken from it has been resolved in its favor (whichever occurs first). The thirty-month preliminary period would not expire until November 25, 1997, four months after the plaintiffs basic ranitidine patent had expired.

This Court has already found that Boehringer's ranitidine hydrochloride product does not infringe the Glaxo patent for Form 2 ranitidine hydrochloride.[1] That was the subject of the October 7, 1996 order. The Court thereafter found that the filing of the ANDA by defendants does not infringe either of those patents and that the defendants do not seek approval to market its Form 1 product until Glaxo's '658 patent expires on July 25, 1997. That was the subject of this Court's order of November 18, 1996.

There is one remaining claim of the plaintiffs still open in this suit as to which the defendants were recently denied summary judgment. That is the claim that ranitidine hydrochloride manufactured by Boehringer and supplied to its joint venture partner, Hexal Pharmaceuticals, Inc., is not exempt from infringement under 35 U.S.C. § 271(e)(1). That claim is also the subject of a separate subsequent suit brought by plaintiffs against Hexal Pharmaceuticals, Inc. and its American subsidiary. That case is still in its early discovery stages. That claim is unrelated to the cause of action seeking an injunction barring ANDA approval of Boehringer's Form 1 product. The claim is also factually and legally unrelated to the claims decided by the Court's orders under consideration. Consequently, there would be no duplication of effort by the appellate court should an appeal be taken from the previous decisions and from the claim involving Hexal. However, since the Court's earlier rulings must be upheld on appeal before the defendants can market their Form 1 product, an immediate appeal would have to be allowed in order to meet the July 25, 1997 expiration

---

1. This resulted from the Court's direction that there be court appointed experts to determine whether or not the defendants' product was Form 1 or Form 2. The experts' conclusions established that it is a Form 1 and not a Form 2 of Zantac.

of plaintiffs' '658 patent. Consequently defendants seek to have the entry of final judgment of these claims under Rule 54(b).

Needless to say the plaintiffs oppose the entry of such orders since the absence of a final appealable judgment will certainly mean a further extension of their patent beyond its expiration date with the very substantial financial benefits involved in the absence of the competition.

Rule 54(b) allows a District Court in a case involving multiple claims to direct entry of final judgment as to one or more but fewer than all of the claims where the Court expressly determines that there is no just reason to delay. In order to enter such an order, the Court must make an express determination that there is no just reason for delay. *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 4–8, 100 S.Ct. 1460, 1463–65, 64 L.Ed.2d 1 (1980). In furtherance of this the Court must give a brief, reasoned explanation concerning the decision to grant certification. *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir.1991). A District Court judgment concerns finality when it renders a decision upon a cognizable claim for relief that ultimately disposes of an individual claim entered in the course of a multiple claims action. *Curtiss–Wright Corp., supra*, at 7, 100 S.Ct. at 1464 citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). The Court must also consider the interest of sound judicial administration and the equities in determining whether, under the circumstances, the aversion to piecemeal appeals should be relaxed. *Curtiss–Wright Corp., supra*, at 8, 100 S.Ct. at 1464–65.

It is abundantly clear that the factual and legal issues involved in Glaxo's claim concerning the ranitidine hydrochloride samples provided by defendants to Hexal Pharmaceuticals is a totally separate issue. The principal factual issue remaining for determination in the two pending suits is what Boehringer and/or Hexal did with the samples. The legal issue once that factual issue is determined is whether the use to which those parties put the samples is exempt within the meaning of 35 U.S.C. § 271(e)(1). As noted earlier, those factual and legal issues are unrelated to the factual and legal issues already decided by this Court on the summary judgment motions. If the ultimate decision of the remaining issue is appealed, it would not present the same issues involved in the matters already decided by this Court.

Plaintiffs raise several objections to the certification of these decisions as a final judgment. Their main argument is that those decisions will be controlled by the *Novopharm* case, *Glaxo Inc. v. Novopharm Ltd.*, 931 F.Supp. 1280 (E.D.N.C.1996), and that appeal is already pending in the Federal Circuit. Undoubtedly that case is very similar to this and the Federal Circuit's ruling could be determinative of the issues already decided in this case. However, we cannot say with any certainty that the Federal Circuit's decision will necessarily turn on the substantive issues presented, nor can we say that either side in this case would be foreclosed from arguing that *Novopharm* has not disposed of all the issues involved in this case. Plaintiffs argue that the Federal Circuit should not have to deal with two appeals raising similar issues. However, it is the province of the Federal Circuit to determine whether or not the two cases are sufficiently identical that its decision in *Novopharm* controls here. Plaintiffs contend that this Court's earlier rulings were not final because we acknowledged that a reversal of the *Novopharm* decision in the Federal Circuit would upset the basis for one of this Court's decisions. That, however, is true in all cases which remain in the District Court while similar issues are pending before the controlling appellate court.

Plaintiffs also argue that the issues presented by this action are not the only impediment to the defendants marketing its Form 1 product. The defendants must get approval of its manufacturing facilities and processes from the Food and Drug Administration. That is unquestionably true but the two matters are totally unrelated. Until this Court has decided and an appellate decision has been rendered or waived, the defendants may not proceed to market their product even if they have obtained Food and Drug Administration approval of their manufacturing processes. Unless the appeal process is

**298**

started immediately, there is no possibility, regardless of whether FDA approval is obtained, of the defendants marketing its product upon the expiration of the plaintiff's patent in July.

The plaintiffs also suggest that there is a relationship between their claim involving the Hexal transaction and the matters previously decided by this Court which might possibly result in some impediment to Boehringer marketing its product following the expiration of the '658 patent. It would be premature to discuss whether such a result might occur. For the moment it is sufficient to say that the nature of the claims are totally separate and that, even if plaintiffs prevail on their § 271(e)(1) claim, it would not likely effect the defendants' entitlement to market its generic ranitidine hydrochloride upon expiration of Glaxo's '658 patent.

Finally we note that the equities strongly favor certifying a final judgment at this time. The claims involving Hexal may not be determined for some months, indeed perhaps not even within this year since discovery in the Hexal action is in its early phases. A failure to enter a judgment at this time allowing an intermediate appeal would with certainty extend the plaintiffs' patent coverage for months beyond its expiration. There is clearly a danger of hardship or injustice in delaying the entry of judgment pursuant to the Court's earlier orders. *Campbell v. Westmoreland Farm Inc.*, 403 F.2d 939, 942 (2d Cir.1968). Consequently this Court directs by certification that this Court's earlier orders of October 7, 1996 and November 18, 1996 be entered as a final judgment.