Thomas A. MARTIN, Plaintiff,

v.

Robert D. BOYCE, Edwin Caldwell, Jr., Charles Kahn, Margaret M. O'Brien, R. Lynn Ogden, John and Jane Doe Number 1 Through 9, Defendants.

Thomas A. Martin, Plaintiff,

v.

The Chapel Hill Tennis Club, Inc., Defendant

Nos. 1:99CV01072, 1:01CV00004.

United States District Court, M.D. North Carolina.

Aug. 22, 2003.

Thomas A. Martin, Chapel Hill, NC, Pro se.

J. Alexander S. Barrett, Dena Beth Langley, Erin L. Roberts, Brian Stephen Clarke, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, NC, for Defendants.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This case is now before the Court on the Plaintiff's Motion for Entry of Judgment pursuant to Rule 54(b) [Doc. # 33 in the 1:99CV01072 case], Defendants' Motions to Consolidate [Doc. # 39 in the 1:99CV01072 case and Doc. # 10 in the 1:01CV00004 case], and Defendant Chapel Hill Tennis Club's Motion to Dismiss [Doc. # 8 in the 1:01CV00004 case]. For the reasons set forth below, the Motions to Consolidate are GRANTED, the Motion for Entry of Judgment is DENIED, and the Motion to Dismiss is GRANTED in part and DENIED in part.

### I.

Plaintiff Thomas Martin, a white male of Irish ancestry, is a member of the Chapel Hill Tennis Club ("CHTC"). He served on CHTC's Board of Directors from November 1997 to November 1999. On May 5, 1998, while Mr. Martin was serving as CHTC's treasurer, CHTC's manager, Laura Dupont, took a medical leave of absence. On May 10, 1998, Mr. Martin was asked by CHTC's president to serve as acting manager. Mr. Martin agreed. As part of this agreement, Mr. Martin stepped down as treasurer and as a member of CHTC's Executive Committee, although he remained on the Board. His tenure as acting manager began May 15, 1998. Ms. Dupont's leave of absence was extended several times. Ultimately, in the fall of 1998, her relationship with CHTC was permanently severed. Mr. Martin agreed to remain as acting manager until a permanent manager could be hired.

In November 1998, Defendant Caldwell, an African–American, was elected president of CHTC. Defendant O'Brien was elected treasurer.

In 1999, the Board decided to delay the search for a manager until the fall, and Mr. Martin agreed to continue as acting manager. Mr. Martin also applied for the position of permanent manager. Some members of the Board began to express concern that Mr. Martin's dual role as Board member and acting manager created a conflict of interest. According to Mr. Martin, the board members

who made these allegations resented Mr. Martin's popularity within CHTC and his efforts to eliminate special privileges historically enjoyed by certain members.

In May, Mr. Caldwell met with two CHTC employees who apparently alleged that Mr. Martin had engaged in racial discrimination and/or sexual harassment against them. Mr. Caldwell referred the employees to Ms. O'Brien, who headed CHTC's Personnel Committee. After Ms. O'Brien and others discussed the situation with Mr. Martin, an ad hoc committee was formed to investigate further.

At the monthly Board meeting for August, conducted on August 17, 1999, Mr. Caldwell and Ms. O'Brien reported on the employees' allegations and the investigation thereof. Ms. Lori Christian, an African–American attorney, was present. The Board authorized her to investigate the situation further and to provide her assessment at the next Board meeting.

On August 24, 1999, Ms. Christian advised Mr. Caldwell that, based on her limited investigation, she believed that Mr. Martin should be terminated immediately. Mr. Caldwell called an emergency Board meeting that eventually took place September 9, 1999. Mr. Martin was excluded from the meeting. At the meeting, the Board voted to fire Mr. Martin if he would not agree to resign. He did not resign and was terminated.

The regularly scheduled Board meeting for September was held on September 21, 1999, and was attended by approximately sixty CHTC members. At the meeting, Mr. Caldwell stated that Mr. Martin's employment had been terminated based on (1) a conflict of interest between his role as director and his job as acting manager, and (2) his "management style."

Mr. Martin filed suit against members of the Board of Directors on December 9, 1999, alleging a variety of federal and state claims. On July 20, 2000, this Court entered an order dismissing several of the counts in Mr. Martin's amended complaint.

On January 3, 2001, Mr. Martin filed an action against CHTC, the 1:01CV00004 action. The individual defendants in the 1:99CV01072 action and CHTC have filed motions to consolidate the cases. Mr. Martin has filed responsive documents in which he stated that he does not object to consolidation of the cases. Therefore, the Motions to Consolidate [Doc. # 39 in the 1:99CV01072 case and Doc. # 11 in the 1:01CV00004 case] are GRANTED.

## II.

Mr. Martin has filed a motion seeking entry of judgment on the claims dismissed by the Court's July 20, 2000 order so that he can immediately appeal the dismissal decision to the Fourth Circuit. Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed. R. Civ. Pro. 54(b) (West Supp.2003).

A request for a Rule 54(b) certification requires a court to conduct a two-part analysis. First, the court must determine that the judgment is final, in that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1335 (4th Cir.1993) (*quoting Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)). Second, the court must determine that there is "no just reason for delay." *Id.* In determining whether there is "no just reason for delay," a district court must be mindful of the strong policy against fragmentation of appeals. *Id.* Furthermore, the Fourth Circuit has explained that "the fact that the parties on appeal remain contestants below militates against the use of Rule 54(b)." *Id.*

In this case, the claims dismissed by the Court's order of July 20, 2000 are final because dismissal pursuant to Rule 12(b)(6) is "an ultimate disposition of an individual claim entered in the course of a multiple

claims action." Thus, it is necessary to determine whether there is "no just reason for delay" in entering judgment and having the dismissal of those claims reviewed by the Fourth Circuit. There are several claims in Mr. Martin's amended complaint still pending before this Court. The parties to those claims are identical to the parties in the dismissed claims that would be heard on appeal by the Fourth Circuit. There is a strong likelihood of future Fourth Circuit appeals with respect to the pending claims. Entry of judgment as to the previously dismissed claims would likely result in the Fourth Circuit considering the same factual scenario on more than one occasion. Such repetition is not an appropriate use of judicial resources. In light of the Fourth Circuit's admonition in *Braswell Shipyards* that "the fact that the parties on appeal remain contestants below militates against the use of Rule 54(b)," Mr. Martin's Motion for Certification pursuant to Rule 54(b) is DENIED.

### III.

CHTC has moved to dismiss several of Mr. Martin's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion should be granted only if, after accepting all well–pleaded allegations in the complaint as true, it appears certain that Mr. Martin cannot prove any set of facts in support of his claims that entitles him to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). The challenged claims in the complaint should not be dismissed unless it is certain that Mr. Martin is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The Fourth Circuit has stated that "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972).

### A.

■ First, CHTC seeks dismissal of Mr. Martin's claim pursuant to 11 U.S.C. § 525(b), which provides: "No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been ... a debtor or bankrupt ... solely because" of the individual's bankruptcy. CHTC asserts that Mr. Martin cannot allege that his bankruptcy was the sole reason for his termination because Mr. Martin has also alleged that he was terminated based on his race. In his claim for relief pursuant to § 525(b) in the complaint against CHTC, Mr. Martin alleges that his bankruptcy was the "sole reason" for his termination. (Comp.¶ 37.) Although the complaint also contains allegations that Mr. Martin was terminated on the basis of his race, pleading in the alternative is permissible. Thus, Mr. Martin's allegation in one part of the complaint that he was terminated based on his race does not prevent him from alleging, in the claim for relief pursuant to § 525(b), that he was terminated solely on the basis of his bankruptcy filing.

Once evidence is available at a later stage in this proceeding, it may be found that Mr. Martin was not terminated solely on the basis of his bankruptcy. At the 12(b)(6) stage, however, Mr. Martin's allegation that he was terminated solely because he had previously filed for bankruptcy is sufficient to withstand a motion to dismiss. CHTC's Motion to Dismiss the § 525(b) claim is DENIED.

### B.

CHTC also asserts that Mr. Martin's libel and slander claims against CHTC are barred by the applicable statute of limitations. North Carolina has a one year statute of limitations for defamation claims. N.C. Gen. Stat. § 1–54(3). A defamation cause of action begins to accrue "at the date of the publication of the defamatory words." *Price v. Penney Co.*, 26 N.C.App. 249, 252, 216 S.E.2d 154, 156 (1975).

In the complaint, Mr. Martin alleges that defamatory statements were made in memoranda dated July 22, 1999, August 26, 1999, and "on or about November 17, 1999." (Comp.¶ 44, 45.) Mr. Martin also alleges that an additional memorandum was published "during the same time period." At the latest, the statute of limitations with respect

to these memoranda would have run on November 17, 2000. Mr. Martin filed the action against CHTC on January 3, 2001. Mr. Martin's libel and slander claims against CHTC are untimely because they were not filed within the one year statute of limitations. CHTC's Motion to Dismiss the libel and slander claims is GRANTED.

## IV.

In summary, Plaintiff's Motion for Entry of Judgment pursuant to Rule 54(b) [Doc. # 33 in the 1:99CV01072 case] is DENIED, Defendants' Motions to Consolidate [Doc. # 39 in the 1:99CV01072 case and Doc. # 10 in the 1:01CV00004 case] are GRANTED, and Defendant Chapel Hill Tennis Club's Motion to Dismiss [Doc. # 8 in the 1:01CV00004 case] is GRANTED in part and DENIED in part.

## ORDER

For the reasons stated in a contemporaneously filed Memorandum Opinion, Plaintiff's Motion for Entry of Judgment pursuant to Rule 54(b) [Doc. # 33 in the 1:99CV01072 case] is DENIED, Defendants' Motions to Consolidate [Doc. # 39 in the 1:99CV01072 case and Doc. # 10 in the 1:01CV00004 case] are GRANTED, and Defendant Chapel Hill Tennis Club's Motion to Dismiss [Doc. # 8 in the 1:01CV00004 case] is GRANTED in part and DENIED in part.