McKEAGUE, Circuit Judge, dissenting.
 

 I dissent for three reasons. First, because the majority does not accord due deference to the district court's interpretation of the facts. Second, because the majority incorrectly analyzes the
 
 Plott
 
 factors of whether Doe was dilatory and whether Doe's desired discovery would have changed the district court's ruling. And third, because the majority's instructions on remand go too far, mandating that the district court permit discovery, rather than instructing the district court to consider whether additional discovery is warranted in light of its holding.
 

 I
 

 We may find that the district court abused its discretion if its "ruling was arbitrary, unjustifiable, or clearly unreasonable."
 
 F.T.C. v. E.M.A. Nationwide, Inc.
 
 ,
 
 767 F.3d 611
 
 , 624 (6th Cir. 2014). This discretion must at least mean that we will not second guess the district court's judgment and reweigh the
 
 Plott
 
 factors on appeal. We should constrain our review to determining whether the district court's conclusions are supported by the record and correct as a matter of law.
 
 See
 

 Curtiss-Wright Corp. v. Gen. Elec. Co.
 
 ,
 
 446 U.S. 1
 
 , 10,
 
 100 S.Ct. 1460
 
 ,
 
 64 L.Ed.2d 1
 
 (1980) (explaining that in reviewing a district court's decision to certify a question for appeal for an abuse of discretion "the proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record."). Instead, the majority effectively applies de novo review to the district court's decision, conducting its own analysis, reweighing the
 
 Plott
 
 factors, and dictating how discovery should proceed.
 

 While the district court did not formally consider each
 
 Plott
 
 factor, its analysis is sufficiently robust to warrant deference. As the majority points out, the district court neither acknowledged the
 
 Plott
 
 factors nor reviewed each in a formal manner. A review of the opinion, however, shows that the district court considered three of the five factors: whether the desired discovery would change its ruling, how long the discovery period lasted, and whether the City of Memphis (the City) was responsive to discovery requests.
 
 See
 

 Plott v. Gen. Motors Corp., Packard Elec. Div.
 
 ,
 
 71 F.3d 1190
 
 , 1196-97 (6th Cir. 1995). Presumably, it found the combination of those three factors dispositive. The district court did not address whether Doe was dilatory and when Doe learned of the issue, the latter of which the majority concludes is not applicable. The district court's failure to address the dilatory
 
 Plott
 
 factor could warrant reversal if none of the
 
 Plott
 
 factors the district court analyzed are dispositive. As I discuss below, the appropriate instruction on remand would be for the district court to reweigh the
 
 Plott
 
 factors taking the dilatory factor into account, not mandating discovery.
 

 The majority errs in making a credibility determination to support its conclusion that the responsiveness
 
 Plott
 
 factor-whether the City was responsive to discovery requests-weighs in Doe's favor.
 

 Id.
 

 at 1196
 
 . The district court noted that "to the extent Defendant was non-compliant with discovery requests, the record show[s] that such difficulties were largely due to the administrative burden of producing thousands of documents spanning multiple years." R. 144, at PID 8889. Instead of deferring to the district court, the majority effectively makes a credibility determination that the City's excuses for its delays
 in producing some requested discovery were not valid. The majority does not explain why it believes the district court's conclusions were unwarranted. Instead the majority speculates that the City's actions suggest some strategic motive to deprive Doe of discovery. Although it is possible to interpret the City's actions as strategic, the record also supports the district court's conclusion that the City's noncompliance was due to a significant administrative burden. Where the facts support multiple interpretations, we should not impose our own over the district court's.
 

 The majority similarly errs in imposing its own interpretation of the facts to weigh the length-of-discovery
 
 Plott
 
 factor without explaining why the district court lacked support in the record for its determination. The district court explained that Doe had adequate time for discovery because, "[p]rior to the Order granting Defendant's Motion for Summary Judgment, the parties conducted expensive and rigorous discovery for a significant period of time-nearly two (2) years."
 
 Id.
 
 at 8887. The majority acknowledges that what constitutes a reasonable length of time for discovery is highly particularized to the facts and circumstances of the case. Instead of deferring to the district court, however, the majority decides that proving discriminatory motivation requires large quantities of data and therefore that the length-of-discovery
 
 Plott
 
 factor is neutral. Determining whether a certain case is one in which the scope of the claim requires more than two years of discovery is precisely the kind of particularized fact determination that should be left to the district court.
 

 II
 

 In addition to erring in reweighing the
 
 Plott
 
 factors instead of giving the district court its due deference, the majority errs in its analysis of two of the
 
 Plott
 
 factors: (1) whether Doe was dilatory in seeking discovery and, (2) whether Doe's requested discovery would have changed the district court's ruling.
 

 1. Whether Doe Was Dilatory in Seeking Discovery is Not This Court's "Main Inquiry"
 

 I agree that Doe was not dilatory in seeking discovery. I disagree, however, with the significance the majority gives that fact. We have held that when reviewing the decision to stay discovery, "[t]his Court's main inquiry is 'whether the moving party was diligent in pursuing discovery.' "
 
 E.M.A. Nationwide
 
 ,
 
 767 F.3d at 623
 
 (citation omitted). Diligence is determined through an analysis of
 
 all
 
 the
 
 Plott
 
 factors, of which a party's dilatoriness is just one factor.
 
 See
 

 Dowling v. Cleveland Clinic Found
 
 .,
 
 593 F.3d 472
 
 , 478 (6th Cir. 2010) ("The overarching inquiry in these [
 
 Plott
 
 ] factors is whether the moving party was diligent in pursuing discovery."). The majority, however, equates finding that Doe was not dilatory with finding that Doe was diligent. The majority's error is understandable. In common parlance, finding someone to not be dilatory might be the same as saying that they are diligent. Our caselaw, however, makes clear that diligence in pursuing discovery is a term of art. Simply because Doe was not dilatory does not mean, so far as the
 
 Plott
 
 factors are concerned, that she was diligent. The majority is incorrect to attribute the significance it does to the fact that Doe was not dilatory.
 

 2. Doe's Desired Discovery Would Not Have Changed the District Court's Decision
 

 I also disagree with the majority's conclusion that Doe's desired discovery would have changed the district court's decision. Doe fails to offer any reason why she
 believes that most of the additional discovery identified in her Rule 56(d) affidavit exists. Much of the material Doe requests rests only on conclusory allegations that documents containing discriminatory practices exist and have been withheld from production. For example, Doe alleges that the City has emails detailing discriminatory practices that Doe has not yet received. Doe does not, however, contend that the City has failed to turn over emails generally, or provide any explanation for why she believes emails containing discriminatory practices exist. Of the discovery Doe identifies in her Rule 56(d) affidavit that is not based on conclusory allegations, that material has already been substantially produced. The majority focuses on the City's failure to turn over "investigative files," the provision of spreadsheets in response to interrogatory requests with the caveat that they were subject to verification by the source material, emails that were allegedly not produced, and the lack of depositions, so I address those with specificity.
 

 Doe never requested the City's "investigative files," so the majority's speculation as to what Doe might be able to prove with the investigative files is unwarranted. All Doe asked for in the requests for production and Rule 56(d) affidavit was the source material used to respond to certain interrogatory requests. Those interrogatory requests, and thus the requested documents, included specific information about each DNA sample that had been collected for sexual assault and violent crimes other than sexual assault. For instance, Doe sought the name, gender, and race of the individual; the collection date; and the crime investigated. For sexual assault crimes, Doe also sought any reason why the sexual assault kit was or was not submitted for testing within 96 hours of collection. The City provided all of that information, albeit for a limited range of years, in spreadsheets as part of its response to Doe's interrogatory requests.
 

 Certainly, some of the source documents used to answer the interrogatory requests would be contained in investigative files. But none of the interrogatory requests, the requests for production, or Doe's Rule 56(d) affidavit is sufficiently broad in scope to require the City to turn over information or documents in investigative files that were not the source materials used to respond to the interrogatory requests. Doe never even defines the term "investigative file." If Doe had actually requested the investigative files it would be reasonable for her to define the term so that the City would know what Doe's request encompassed. The closest Doe's Rule 56(d) affidavit gets to requesting the investigative files is in subparagraph (g) of paragraph 10. There, Doe lists as documents that have yet to be produced "investigatory documents in sexual assault cases ... which contain proof of discriminatory and/or stereotypical law enforcement practices." R. 103-2, at PID 1090. As an initial matter, Doe's request is conclusory, merely assuming that investigative documents containing proof of discrimination exist in investigative files. Further, Doe's request does not ask for
 
 all
 
 investigative documents for violent crimes. Nor does Doe's request encompass the entire investigative file. Instead, Doe's request is limited to only documents in investigative files containing proof of discriminatory and or stereotypical law enforcement practices.
 

 Even if Doe received the requested investigative file documents, Doe would still not receive a statistically meaningful sample of investigative files from which she could draw inferences. By receiving only what was requested-the specific pages or parts of pages with the source material relevant to her interrogatory requests-Doe would have nothing more in substance
 than she did before the Rule 56(d) motion. Doe could not, for example, determine whether it was evident that more time was spent investigating other violent crimes than sexual assault crimes because she could not analyze the number of documents in each file and would not receive source material detailing the time and resources used to investigate the various crimes. In sum, there is no basis for the majority to conclude that the investigative files could change the district court's ruling.
 

 Neither would production of the source materials used for the City's interrogatory spreadsheet responses change the district court's ruling. The majority makes much of the caveat accompanying the City's interrogatory response spreadsheets that the information was subject to verification with the source material. Using this statement to conclude that the source material could change the district court's ruling, however, goes too far. First, the district court did not indicate that the caveat accompanying the spreadsheets impacted its decision. Therefore, even were the information verified with the source material, the verification itself would not change the district court's ruling. Second, Doe does not contend that the spreadsheets themselves failed to answer the interrogatory requests or were unreliable. Instead, Doe is unsatisfied with the spreadsheets because they did not cover the entire period from 1980 to the date of the request. Doe contends that there has been on-going discrimination since 1980. So, while adding additional years of data might impact the extent of her claim, the availability of only some years of data should not affect whether she can make out a claim in the first place. Finally, even if the spreadsheets could not be relied on to the same degree without production of the source material, there is no indication that the spreadsheets contain systemic errors. The lack of confidence affects only the statistical significance to assign statistical inferences that can be drawn from the data, not whether inferences can be drawn at all. There is no reason to think that marginally increased statistical confidence would provide evidence that was different in kind, rather than merely different in degree. And since the district court made its ruling on the absence of any evidence, not the lack of a sufficient degree of evidence from the spreadsheet data, the source material would not change its ruling.
 

 Although the majority indicates that the requested depositions and alleged lack of emails could change the district court's decision, the majority only supports its declaration by vaguely referencing the possibility that the depositions and emails could show animus. The majority does not explain its basis for that conclusion and does not address the fact that Doe's requests concerning emails and depositions are based on conclusory allegations. Doe's Rule 56(d) affidavit seeks only emails and internal correspondence to the extent that they contain discriminatory and or stereotypical law enforcement practices. Doe's requests, therefore, make the conclusory allegation that emails containing discriminatory practices exist and were withheld by the City. Doe does not offer any basis for her allegation that emails containing discriminatory practices exist. She does not, for example, allege any bad faith on the part of the City in suppressing responsive material. Since the City has already made substantial productions, including of internal documents, there is doubly a lack of reason to believe that emails containing evidence of discrimination exist and were withheld. Similarly, for the depositions, although it is true that depositions might reveal animus, Doe provides no reason why she believes that depositions would provide evidence of animus. It is always
 true that a deposition
 
 might
 
 provide smoking gun evidence. But without any indication that such smoking gun evidence exists and could be found via deposition, mere speculation that depositions could change the district court's ruling is just that-speculation. As all Doe offers for why emails and depositions could change the district court's ruling are conclusory allegations and speculation, Doe's assertions to the contrary in the Rue 56(d) affidavit should not be credited.
 
 See
 

 Emmons v. McLaughlin
 
 ,
 
 874 F.2d 351
 
 , 358 (6th Cir. 1989).
 

 In sum, Doe failed to identify anything in the Rule 56(d) affidavit that could change the district court's decision. Therefore, I disagree with the majority that this
 
 Plott
 
 factor weighs in Doe's favor.
 

 III
 

 Even if remand were justified, our instructions on remand should account for the deference we give the district court. Unless our review of the
 
 Plott
 
 factors means that the district court could reach only one conclusion, we should not foreclose the district court from reconsidering the
 
 Plott
 
 factors on remand in light of our decision. Here, the majority does not indicate that, taken as a whole, the
 
 Plott
 
 factors could mean only that the district court should grant additional discovery. Nor has the majority identified any
 
 Plott
 
 factor as dispositive, meaning the district court would have to permit additional discovery regardless of how it weighed the other factors. Thus, even taking the majority's opinion to announce what the record could support, rather than its own interpretations of the facts, the proper instruction on remand would be for the district court to determine whether additional discovery is warranted in light of the majority's opinion. It is incorrect to simply mandate that the district court permit additional discovery.