L.B. FOSTER COMPANY, Plaintiff–Appellee,

v.

AMERICA PILES, INC., Defendant,

Grace Industries, Inc., Defendant–Appellant,

Michael J. Amoruso, Esq., Appellant.

Docket No. 97–7256.

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1997.

Decided Feb. 26, 1998.

Judah D. Greenblatt, New York City (Mc-Donough Marcus Cohn & Tretter, New York City, on the brief), for Plaintiff–Appellee.

Vincent A. DeIorio, Purchase, NY, for Appellants.

Before: KEARSE and CABRANES, Circuit Judges, and CHIN, District Judge.[*]

KEARSE, Circuit Judge:

Defendant Grace Industries, Inc. ("Grace"), appeals from a judgment entered in the United States District Court for the Eastern District of New York pursuant to Fed.R.Civ.P. 54(b), John Gleeson, *Judge,* awarding plaintiff L.B. Foster Company ("Foster") $179,593.65, plus interest, against Grace and defendant America Piles, Inc. ("API" or "America Piles"). The district court granted summary judgment to Foster on its contract claims against both defendants with respect to its lease of certain equipment. On appeal, Grace contends principally that it was not a lessee of the equipment but only a limited guarantor who had fulfilled its guarantee obligation, and that the ambiguous nature of the document embodying its guarantee precluded the granting of summary judgment against it. Michael J. Amoruso, Esq., an associate of the firm representing Grace, appeals from so much of the judgment as imposed sanctions against him personally for opposing entry of the Rule 54(b) certification. For the reasons that follow, we reverse the order imposing sanctions against Amoruso; and we vacate the judgment against Grace and remand for further proceedings.

## I. BACKGROUND

Some of the facts are not in dispute. In 1991, Foster was a provider of construction equipment. Grace was a general contractor for certain road construction at John F. Kennedy Airport (the "JFK Project"). API, whose business included the installation of piles used as foundations, was, in early 1991, a dormant corporation with no officers; James Coppola was its sole shareholder. In the summer of 1991, API and Grace considered entering into a joint venture; in pursuit of that goal, two officers of Grace became, for a time, officers of API, and API's corporate address was changed to that of Grace.

In the fall of 1991, Foster provided a vibratory hammer and other equipment for the JFK Project, pursuant to agreements with API and Grace. The parties agree that there were two written agreements material to this appeal, and that one of them was signed by Grace. The meaning of the agreement signed by Grace, however, is in dispute.

### A. *The Events*

In October 1991, two documents, on Foster forms entitled "EQUIPMENT RENTAL AGREEMENT," were signed. Insofar as is relevant to this appeal, the contents of the two documents were identical. Both listed

---

[*] Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation.

the equipment in question, specified the weekly and monthly rent to be paid, and stated that the "EQUIPMENT IS TO BE USED ONLY AT THE FOLLOWING JOB LOCATION: J.F.K. Airport." Both identified the "LESSEE" as API. The first agreement was signed on October 7, 1991, by "Project Manager" Coppola, API's sole shareholder ("October 7 agreement"). The second agreement was signed on October 23, 1991, by "Project Manager" Walter R. Sokolich ("October 23 agreement"). Sokolich was an employee of Grace. Neither the October 7 agreement nor the October 23 agreement, however, mentioned Grace.

Foster delivered the equipment to API on October 8, 1991. The equipment was used on the JFK Project until February 1992. Foster sent rent invoices to API at the address of API and Grace. Grace paid the bills until April 1992; thereafter, API did not return the equipment to Foster, and neither API nor Grace paid further rent. The equipment was not returned until Foster obtained a court order requiring its return.

Foster commenced the present action in November 1992, asserting two causes of action against API, and one against Grace. The claim against Grace was stated as follows:

21. On October 23, 1991, GRACE executed an Equipment Rental Agreement in the same form as the Foster/America Piles October 7, 1991 Equipment Rental Agreement and by doing so, GRACE guaranteed to FOSTER the payment by AMERICA PILES of the sums due FOSTER under the Foster/America Piles Rental Agreement....

22. On September 9, 1992 GRACE wrote to FOSTER confirming that the Foster/Grace Equipment Rental Agreement dated October 23, 1991 was intended to be a guarantee by GRACE of all of the obligations of AMERICA PILE [sic] owed to FOSTER under the Foster/America Pile [sic] Rental Agreement dated October 7, 1991....

(Complaint ¶¶ 21, 22.) Grace denied these allegations and asserted a cross-claim against API for indemnification in the event that Grace were held liable to Foster. API, for its part, denied most of the allegations against it and asserted an indemnification cross-claim against Grace.

B. *The Motions for Summary Judgment*

In June 1994, following discovery, Foster moved for summary judgment against API and Grace, contending that both were liable as primary obligors:

The Rental Agreements required AMERICA PILES and GRACE to pay FOSTER a monthly rent of $10,500 plus other charges for the Equipment from the date of its shipment to the date of its return.

(Foster Statement pursuant to Rule 3(g) of the Local Rules for the Eastern District of New York ("Rule 3(g)") ¶ 3.) In support of its contention that Grace had unlimited, primary liability for the equipment rental, Foster submitted, *inter alia*, the affidavit of its regional credit manager stating that any characterization of Grace's role as that of guarantor must have been a "side deal" strictly between Grace and API, because prior to Sokolich's signing the October 23 agreement, "GRACE never advised FOSTER that their [sic] execution of the Rental Agreement was intended to be merely a guarantee or that the guarantee was limited to when the Equipment was in use at the project." (Affidavit of Carol Koss dated May 6, 1994, ¶ 18.) "Sokolich signed the Rental Agreement but never conveyed to FOSTER, at the time of execution of the Rental Agreement, that his signature was meant merely as a limited guarantee." (*Id.* ¶ 15.) Foster also submitted various documents, including handwritten notes, apparently written by one of its employees, stating that "America Piles, Inc is Division of Grace Ind."

API opposed Foster's motion for summary judgment against API and cross-moved for summary judgment against Grace, contending that API had never entered into a rental agreement with Foster. Submitting an affidavit from Coppola, API argued, *inter alia*, that in June 1991 Grace had essentially taken over API in anticipation of the then-contemplated joint venture; that when Coppola signed the October 7 agreement, he was an employee of Grace; that in signing the contract, Coppola acted on behalf of Grace, not

API; and that "Grace agreed to make all of the payments for the rental of the Equipment, as evidenced by the execution of the Grace Rental Agreement by Defendant Grace's Project Manager, Walter Sokolich on October 23, 1991." (API Rule 3(g) Statement ¶ 11.)

Grace, supporting its position with affidavits from its executive vice president and controller, opposed the summary judgment motions against it by Foster and API, asserting principally that there were disputed issues as to the extent of its undertaking to Foster. Grace asserted, *inter alia*, that Sokolich had signed the October 23 agreement at the request of Foster solely for the purpose of guaranteeing API's payment of the rent due under the October 7 agreement signed by Coppola, and solely for the period during which the equipment was to be used on the JFK Project. Grace asserted that Foster and Grace had discussed and agreed on those limitations. Grace pointed out that it had paid Foster the rent for the period during which the equipment was used on the JFK Project; its controller stated that Grace's payments to Foster for the two months beyond that period were inadvertent.

Grace also asserted that Coppola had never been an employee of Grace; that API had been Grace's subcontractor on the JFK Project; that API had never been a subsidiary or division of Grace; that Grace had informed Foster that API was a subcontractor and had never represented that API was a Grace subsidiary or division; that neither Grace nor API had ever had an ownership interest in the other; and that Grace had made API's payroll payments (for which API reimbursed Grace) and temporarily shared its officers with API solely to accommodate API and to allow Grace to minimize the risk of liens that could impede Grace's receipt of payment for the JFK Project if API's employees were not paid.

## C. The Decisions of the District Court

The district court referred the summary judgment motions to Magistrate Judge Joan M. Azrack for report and recommendation. The magistrate judge recommended that all of the motions for summary judgment be denied. She found principally that there were factual issues to be tried as to the capacity in which Coppola signed the October 7 agreement and his power to bind API.

As to Foster's claim against Grace, the magistrate judge noted that Foster had equivocated as to Grace's role, alleging in the complaint that Grace was a guarantor, and contending in its summary judgment motion that Grace was a primary obligor, *see* Report and Recommendation dated February 28, 1995, at 19; thus, Foster asserted that Grace was liable as both "guarantor *and* lessee," *id.* at 7 (emphasis added). The magistrate judge stated that unless the complaint were amended, Foster's claim should be treated as one against Grace as guarantor; she concluded that since a guarantor cannot be liable unless the principal is liable for the underlying debt, and since she had found that there were issues to be tried as to the liability of API, Grace's liability as guarantor could not yet be determined. The magistrate judge did not address Grace's contention that the scope of its guarantee had been limited to the JFK Project and that it had fulfilled its obligation by paying all rent due through completion of that project. She concluded, however, by noting that "this action represents the twisted turn of events that occur when the contractual liability of each party is not clear from the documentary evidence." *Id.* at 23.

In an Order dated December 21, 1995 ("1995 Order"), the district court rejected the magistrate judge's recommendations that Foster's summary judgment motions be denied, and it granted Foster summary judgment on the claims against both API and Grace. In granting judgment against Grace, the court stated only, "there is no genuine issue of material fact requiring trial on the issue of Grace's liability as guarantor of API's obligations to Foster." 1995 Order at 2.

After receiving an additional report and recommendation from the magistrate judge as to the amount of Foster's damages, the district court ordered the entry of a final judgment against both API and Grace pursuant to Fed.R.Civ.P. 54(b) in the amount of $179,593.65. Order dated September 12,

1996 ("September 1996 Order"). The cross-claims between the defendants remained unresolved.

Grace promptly appealed, but its appeal was withdrawn after this Court's Staff Counsel suggested that the district court's unexplained Rule 54(b) certification was inadequate to create a final, immediately appealable judgment. Thereafter, over Grace's objection, the district court entered a new Rule 54(b) certification, which it explained in a Memorandum and Order dated December 24, 1996 ("December 1996 Order") (*see* Part II.A. below). The December 1996 Order stated that Foster had "rented a vibratory hammer and other construction equipment to both America Piles, Inc. ('API') and Grace. Thereafter, API and Grace failed to make timely payments on the rented equipment." December 1996 Order at 1–2. The court noted that Foster was entitled to be paid and suggested that defendants had perhaps engaged in dilatory tactics. It again directed that a final judgment be entered in favor of Foster against API and Grace.

As discussed in greater detail in Part II.C. below, the court also concluded that Grace's counsel, Amoruso, should be sanctioned pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 (1994) for frivolously opposing the new Rule 54(b) certification.

A final judgment was entered, and this appeal by Grace and Amoruso followed. API, which also filed a notice of appeal, has withdrawn its appeal with prejudice.

## II. DISCUSSION

On appeal, Grace contends that the district court erred in granting a Rule 54(b) certification and in granting summary judgment against it. Grace and Amoruso contend that the imposition of sanctions against Amoruso was inappropriate. For the reasons that follow, we reject Grace's challenge to the Rule 54(b) certification, but we conclude that summary judgment and the imposition of sanctions were inappropriate.

### A. The Rule 54(b) Certification

■ When the district court has resolved at least one but fewer than all of the claims in an action, Rule 54(b) permits the court to direct the entry of a final judgment "only upon an express determination that there is no just reason for delay." Fed.R.Civ.P. 54(b). Respect for the " 'historic federal policy against piecemeal appeals' " requires that such a certification not be granted routinely. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980) (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956)). The power "should be used only in the infrequent harsh case" where there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Brunswick Corp. v. Sheridan,* 582 F.2d 175, 183 (2d Cir.1978) (internal quotation marks omitted); *see, e.g., Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 629 (2d Cir. 1991); *Cullen v. Margiotta,* 618 F.2d 226, 228 (2d Cir.1980) (per curiam).

■ The determination of whether there is no just reason to delay entry of a final judgment is a matter committed to the sound discretion of the district court. *See, e.g., Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. at 8–10, 100 S.Ct. at 1464–66; *Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Since the certification is to be reviewed for abuse of discretion, it must be accompanied by a reasoned, even if brief, explanation of the basis for the court's determination that there is no just cause for delay; a certification that is conclusory or merely quotes the words of the Rule is insufficient. *See, e.g., National Bank of Washington v. Dolgov,* 853 F.2d 57, 58 (2d Cir. 1988) (per curiam) (dismissing appeal for lack of a final judgment where certification merely recited the words of the Rule); *Cullen v. Margiotta,* 618 F.2d at 228 (same); *Arlinghaus v. Ritenour,* 543 F.2d 461, 463–64 (2d Cir.1976) (per curiam) (same).

■ Where the court has directed the entry of final judgment as to claims that are separable from and independent of the unresolved claims, and has provided an informa-

tive explanation, its conclusion that there is no just reason for delay is entitled to "substantial deference." *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. at 10, 100 S.Ct. at 1466. If the question of whether certification should have been granted is a close one, we will normally accept it if that course "will make possible a more expeditious and just result for all parties." *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 286 (2d Cir.1974).

■ In the present case, the district court's initial Rule 54(b) certification in its September 1996 Order was inadequate, for it was unaccompanied by any explanation whatever. The December 1996 Order, however, set out the court's reasoning as follows:

> First, since the only remaining claims are between the defendants for indemnification, plaintiff should not be forced to await the outcome of that separate, distinct and independent quarrel before judgment is entered on its behalf. This is especially true given that no prejudice will result to defendants API and Grace from this course, since (i) their liability is already fixed; (ii) they remain free to pursue their cross-claims against each other; and (iii) Foster is, in any event, entitled to pursue collection of its judgment against either or both of the defendants.
>
> Furthermore, there is reason to believe that defendants are not expeditiously proceeding with their cross-claims. In my judgment, there is no just reason to permit a further delay of the remaining proceedings, since that would serve only to postpone the satisfaction of Foster's judgment. Accordingly, I find that the entry of a final judgment on plaintiff's claims is consistent with sound judicial administration and prevents a potential unjust delay of Foster's execution of its judgment.

December 1996 Order at 5–6.

This explanation plainly is sufficiently informative to permit appellate review. Further, we are ultimately persuaded that, as a whole, the substance of the explanation is adequate, though we have some hesitation as to the relationship between the resolved and unresolved claims. While the district court describes the case as involving "independent quarrel[s]," we are not entirely convinced that the claims are independent, for Grace's claim against API for indemnification is intertwined with the merits of Foster's claim against Grace. Both the nature of Grace's liability and the scope of its guarantee are common to both the claim and the cross-claim and depend, in large part, on the contents and interpretation of the October 23 agreement prepared by Foster. Thus, we think the matter of whether Grace's claim against API is independent of Foster's claim against Grace presents a close question. The district court's view that defendants were not proceeding expeditiously, however, is a weighty factor, and the court's conclusion that an immediate partial final judgment was warranted in order to prevent injustice to Foster is entitled to considerable deference. We are thus persuaded that this Rule 54(b) certification was not an abuse of discretion.

## B. The Granting of Summary Judgment

The principles governing consideration of motions for summary judgment are well established. Summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor. *See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 298 (2d Cir.1996). If there are genuinely disputed material factual issues on which a factfinder might reasonably find for the party opposing summary judgment, summary judgment is inappropriate. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Our review of the grant of summary judgment is *de novo, see, e.g., Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993), and is governed by the same principles, *see,*

*e.g., Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995).

In a contract dispute, summary judgment generally should not be granted unless the agreement is unambiguous. *See, e.g., Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993). Where the contract is ambiguous and there is relevant extrinsic evidence of the parties' actual intent, the contract's meaning is an issue for the trier of fact, and summary judgment is inappropriate. *See, e.g., Seiden Associates, Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992).

We cannot conclude that summary judgment was properly granted against Grace in this case. Preliminarily, we note that the district court's rationale for finding Grace liable is not clear. In its initial decision, the court stated that there was "no genuine issue of material fact requiring trial on the issue of Grace's liability *as guarantor* of API's obligations to Foster." 1995 Order at 2 (emphasis added). Its later order stated that Foster had "rented" the equipment "to both America Piles, Inc .... and Grace." December 1996 Order at 1. Thus, it is not clear whether the court ultimately ruled that Grace was liable as a guarantor or as a primary obligor.

Further, there are factual questions to be decided with respect to Grace's liability on either theory. For Grace to be liable as a primary obligor, on the present record, one would have to conclude that the October 23 agreement made Grace a lessee of Foster's equipment. Although Foster advocated that conclusion, stating that Grace had not given any indication that it meant its signing of the October 23 agreement to convey a guarantee rather than acceptance of full primary responsibility as a lessee, the October 23 agreement is, in this regard, ambiguous at best. The writing itself contained no suggestion that Grace was meant to be the lessee. The document, which is a Foster form and presumably was prepared by Foster, stated that the lessee was API. The document did not mention Grace at all. It would perhaps not be impossible for a factfinder to conclude that, by signing the October 23 agreement, Grace and Foster intended Grace to be a lessee; but the signing of a document that identifies only a different entity as the lessee, and makes no mention whatever of the signing entity, surely does not warrant that conclusion as a matter of law.

As to Grace's potential liability as a guarantor, there is a different question, for though the October 23 agreement did not mention guarantees, Grace has conceded that, in signing the document, it meant to become a guarantor. The question remains, however, as to the scope of its guarantee. Foster alleges that Grace's guarantee was unlimited, extending to all sums that API might owe Foster prior to API's return of the equipment covered by API's October 7 agreement. Grace asserted that it had oral discussions with Foster and that the two reached agreement not only that Grace's role was to be that of guarantor, but also that the guarantee extended only to API's use of the equipment at the JFK Project. Foster asserted (notwithstanding its pleading of a guarantee) that there had been no discussions of any guarantee. Plainly to the extent that a determination of the scope of the guarantee requires consideration of evidence extrinsic to the document, there are factual issues to be tried. Further, the October 23 agreement itself would seem to support Grace's view that its guarantee was limited, for the Foster form provided that the "EQUIPMENT IS TO BE USED ONLY AT THE ... JOB LOCATION" described therein, which in this case was "J.F.K. Airport." There being no mention in the writing of any guarantee, Grace's contention that its signing of this document did not bespeak an undertaking to guarantee payment for any use beyond that to which the written document expressly restricted the lessee cannot be rejected as a matter of law.

Given the dispute as to the oral discussions, and given Foster's reliance on a document that did not mention either Grace or a guarantee, we conclude that the entry of summary judgment in favor of Foster against Grace was impermissible.

### C. *The Imposition of Sanctions*

The background of the district court's imposition of sanctions against Amoruso is as

follows. After a judgment was entered against API and Grace pursuant to the September 1996 Order directing that a final judgment be entered, Grace promptly appealed. As noted in Part II.A. above, however, the Rule 54(b) certification in that order was insufficient. This Court's Staff Counsel pointed out the deficiency at a prehearing conference, and the parties stipulated that the appeal would be withdrawn. That stipulation, So–Ordered by this Court ("Stipulation"), stated that "the parties will seek to have the District Court issue a new certification meeting Circuit requirements."

Thereafter, Amoruso informed Foster that Grace would oppose entry of a Rule 54(b) certification. Foster then wrote to the district court, stating that in the Stipulation, the parties had "agree[d] to seek a new Certification in the District Court," and that "[d]espite this written, so-ordered agreement to seek a new Certification, I am advised by Mr. Amaruso [sic] that he will not do so and in fact intends to oppose same." (Letter from Judah D. Greenblatt to Judge Gleeson dated November 8, 1996, at 2 (emphasis in original).) In that letter, Foster asked the court not only to grant the Rule 54(b) certification, but also to impose sanctions against Amoruso.

Grace proceeded to oppose the Rule 54(b) certification, taking the position that under such cases as *Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, certification would be improper because Grace's unresolved indemnification cross-claim against API was not independent of Foster's claim against Grace. Grace argued that adjudication of its cross-claim would entail "a full factual inquiry into the relationship between Foster, Grace and API with regard to API's rental of equipment from Foster," involving "an extensive examination as to the duration and extent of Grace's obligations as guarantor for Foster's equipment." (Letter from Michael J. Amoruso to Judge Gleeson dated November 14, 1996, at 5.)

The district court concluded that Amoruso should be sanctioned pursuant to Fed. R.Civ.P. 11 and 28 U.S.C. § 1927

for part of the expense incurred by Foster in seeking this Rule 54(b) certification.

Given the frivolity of Mr. Am[o]ruso's arguments, I can only conclude that his objections to the entry of a final judgment are made for an improper purpose. The stipulation entered into states: "Whereas the parties *will seek* to have the District Court issue a new certification meeting Circuit requirements." (emphasis added). There is no room for ambiguity in that unequivocal statement. Mr. Am[o]ruso told the Second Circuit that he would seek the very relief that he now opposes.

. . . .

At oral argument, Mr. Am[o]ruso . . . . stated that although he intended to seek a "new certification meeting Circuit requirements" when he signed the stipulation, he became unable to after he read *Harriscom* and realized that those requirements could not be met on the facts of this case. I do not credit this explanation. First, *whatever the merits of this Rule 54(b) certification, the decision to issue it is, at the very least, an issue about which reasonable people could disagree.* Thus, seeking a certification from this Court could hardly be said to constitute a gross error, as Mr. Am[o]ruso now suggests.

December 1996 Order at 7–8 (last emphasis added).

■ We have several difficulties with the court's decision. To begin with, there were failures to comply with procedural safeguards. For example, if sanctions are to be imposed pursuant to Rule 11 upon motion, that motion is to be made separately from any other motion. *See* Fed.R.Civ.P. 11(c)(1)(A). If the sanctions are to be imposed *sua sponte,* the court must proceed by order to show cause. *See* Fed.R.Civ.P. 11(c)(1)(B). Further, a party is entitled to notice of the provision under which sanctions are sought, in order that he be forewarned as to the standard under which his conduct is to be evaluated. Thus, if sanctions are to be imposed pursuant to § 1927, a notice that sanctions are sought under Rule 11 is insufficient. *See, e.g., Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96–97 (2d Cir.1997).

■ In this case, Foster included its request for sanctions in its letter requesting a

Rule 54(b) certification, thereby failing to give Amoruso the separate notice referred to in Rule 11. Further, Foster's sanctions request did not identify the provision or provisions under which sanctions were sought. The district court did not thereafter require Foster to serve a motion that would have complied with Rule 11; nor did the court enter an order to show cause, or otherwise give Amoruso notice as to the provisions under which it was considering sanctions.

█ Further, we have substantive difficulties with the court's rationales quoted above, i.e., that the Stipulation precluded Amoruso from opposing even a certification he reasonably believed to be improper and that his opposition was frivolous. First, the Stipulation did not bind the parties to seek, as Foster's motion described it, simply "a new Certification." Rather, as the court noted, it bound them to seek a certification that would "meet[ ] Circuit requirements." This qualifying language, however, seems to have been overlooked, as the court emphasized the words "will seek," notwithstanding its acknowledgement that Amoruso took the position that in this case the pertinent standard "could not be met." The Stipulation's qualifying language could not properly be interpreted as referring merely to matters of form, for, to be proper, a Rule 54(b) certification must, as indicated in Part II.A. above, meet the requisite substantive criteria. For example, any claim whose resolution is to be reflected in the final judgment must be separable from the claims that remain pending. If counsel could reasonably have believed that the circumstances of this case precluded issuance of a certification that would meet Circuit standards, the language of the Stipulation did not bar him from opposing certification.

█ Nor can we agree that Amoruso's opposition to certification was frivolous. As noted in Part II.A. above, we think the matter of whether Grace's claim against API for indemnification was independent of the substance of Foster's claim against Grace, to wit, whether Grace's role was that of guarantor for API and whether its guarantee was limited to use of the equipment for the project specified in the agreement that Foster provided, presents a close question. Indeed, the district court itself stated that the Rule 54(b) certification in this case was a matter about which "reasonable people could disagree." December 1996 Order at 8.

Given that the language of the Stipulation did not foreclose opposition to a Rule 54(b) certification that would be improper, and given that reasonable persons could disagree on the close question of the independence of the relevant claims, we think it cannot fairly be said that Amoruso's opposition to certification was either precluded or frivolous. We conclude that the imposition of sanctions was an abuse of discretion.

## CONCLUSION

We have considered all of Foster's arguments in support of the district court's grant of summary judgment against Grace and imposition of sanctions against Amoruso, and have found them to be without merit. The judgment against Grace is vacated, and the matter is remanded for trial. The imposition of sanctions is reversed.

Costs to Grace.