**BLUE CROSS OF CALIFORNIA et al.,**

v.

**SMITHKLINE BEECHAM CLINICAL LABORATORIES, INC.**

No. 3:97CV1795 AVC.

United States District Court, D. Connecticut.

March 31, 2000.

**126**

John Burns Farley, Daniel P. Scapellati, Halloran & Sage, Hartford, CT, Thomas W. Brunner, Laura A. Foggan, C. Russell Clause, Eric Mahr, Nicole Telecki, Kirk J. Nahra, David O. Ferry, Clifford M. Sloan, Rand L. Allen, Russell D. Ducan, Wiley, Rein & Fielding, Washington, DC, Alison M. Duncan, David L. Douglass, Thomas O. Gorman, Heather J. Stewart, Porter, Wright, Morris & Arthur, Washington, DC, for plaintiffs.

Bourke G. Spellacy, Richard S. Order, Donald C. Mahoney, Updike, Kelly & Spellacy, P.C., Hartford, CT, Herbert Dym, Mark H. Lynch, Bobby R. Burchfield, Ethan M. Posner, Covington & Burling, Washington, DC, Frederick G. Herold, Thomas H. Lee, II, Dechert, Price & Rhoads, Philadelphia, PA, John P. Lynch, Joseph A. Sullivan, Latham & Watkins, Chicago, IL, for defendants.

### RULING ON THE PLAINTIFFS' MOTION FOR FINAL ORDER OF JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b)

COVELLO, District Judge.

This is a consolidated action for legal and equitable relief in which the plaintiffs, thirty-seven health care insurers, four health care plans, and six individuals, claim that the defendant, SmithKline Beecham Clinical Laboratories, Inc. (SBCL), engaged in, *inter alia*, fraudulent billing practices. The second amended complaint and the amended class action complaint assert causes of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), the Pennsylvania Insurance Fraud Statute, 18 Pa.Stat.Ann. § 4117(a)(2) and under state common law tenets sounding in unjust enrichment and restitution.

On July 2, 1999, this court dismissed the RICO action asserted in counts I, II and III of the second amended class action complaint, the ERISA action asserted in count IV of the second amended class action complaint to the extent the claims were asserted by 31 of the plaintiff-insurers, and count V alleging federal common law claims. Further, the court dismissed counts I and III of the consolidated class action complaint alleging causes of action under RICO and federal common law, respectively, and dismissed counts IV, V and VI of the consolidated class action complaint to the extent those claims were asserted by four plaintiffs-employee benefit plans.

The plaintiffs make the within motion pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.[1] The issue presented is whether entry of final judgment is appropriate as to Counts I, II, III and IV. For the reasons hereinafter set forth, the plaintiffs' motion for final judgment (document no. 222), is GRANTED.

### FACTS

On August 19, 1997, thirty-seven insurance companies initiated this lawsuit.

On June 11, 1998, the court dismissed the plaintiff insurers' amended complaint and the individual plaintiffs (now the "class plaintiffs") complaint, but gave them leave to re-file their claims against SBCL.

---

1. Fed.R.Civ.P. 54(b) states, in relevant part that

   [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties, only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

On September 18, 1998, the plaintiff insurers filed their second amended complaint against SBCL.

On September 29, 1998, the "class plaintiffs"[2] filed their consolidated amended class action complaint.

The second amended complaint and the amended class action complaint disclose that the plaintiff insurers are thirty-seven health insurers[3] and payers for health care services, and the "class plaintiffs"[4] are four employer benefit plans, one corporation[5] and six individuals. SBCL is a subsidiary of SmithKline Beecham plc, a British corporation and incorporated in the state of Delaware. SBCL owns and operates one of the nation's largest chains of clinical laboratories.

The gravamen of the second amended complaint and the RICO Case Statement is that from 1989 until 1995, SBCL engaged in fraudulent billing practices that resulted in millions of dollars in losses to the plaintiff insurers. Specifically, the plaintiff insurers allege that SBCL exploited the health care payment system in five fundamental ways: 1) SBCL billed the plaintiff insurers for tests that physicians did not order or intend to order and billed for tests that it had led physicians to believe would not result in separate charges ("add-ons"); 2) SBCL offered physicians discounts for certain test packages, but billed the plaintiff insurers for the full price for supposedly discounted test packages ("selective discounts"); 3) SBCL billed the plaintiff insurers separately for expensive constituents of test panels that should have been billed at a single composite rate ("unbundling"); 4) SBCL performed and billed for more expensive tests

2. On July 7, 1999, the court denied, without prejudice, the motion to certify the class.

3. The *Blue Cross* plaintiffs are as follows: Blue Cross of California, California Physicians' Services (d/b/a Blue Shield of California), Aetna Life Insurance Company, Anthem Health Plans, Inc. (d/b/a Anthem Blue Cross and Blue Shield of Connecticut), Blue Cross and Blue Shield of Florida, Inc., Blue Cross & Blue Shield of Georgia, Inc., Golden Rule Insurance Company, John Deere Health Care, Inc., Pioneer Financial Services, Trustmark, Principal Life Insurance Company, Humana, Inc., Louisiana Health Services & Indemnity Company, Inc. (d/b/a Blue Cross and Blue Shield of Louisiana, Associated Hospital Service of Maine (d/b/a Blue Cross/Blue Shield of Maine), Blue Cross/Blue Shield of Michigan, Allianz Life Insurance Company of North America, Blue Cross/Blue Shield of Minnesota, Federated Mutual Insurance Company and Federated Service Insurance Company, Reliastar Life Insurance Company, Mutual of Omaha Insurance Company, Blue Cross and Blue Shield of New Jersey, Inc., The Prudential Insurance Company of America, Finger Lakes Health Insurance Company, Inc. and Finger Lakes Medical Insurance Company, Inc. (d/b/a Finger Lakes Blue Cross and Blue Shield), The Guardian Life Insurance Company of America, New York Care Plus Insurance Company, Inc. (d/b/a Blue Cross and Blue Shield of Western New York and Blue Shield of Northeastern New York), New York Life Insurance Company, Blue Cross/Blue Shield of North Carolina, Jefferson Pilot Life Insurance Company, Blue Cross & Blue Shield of Rhode Island, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Inc., Trigon Insurance Company (d/b/a Trigon Blue Cross/Blue Shield), Group Hospitalization & Medical Services, Inc. (d/b/a Blue Cross/Blue Shield of the National Capital Area), Blue Cross and Blue Shield United of Wisconsin and United Wisconsin Services, Inc., Employers Health Insurance Company, Time Insurance Company, and Wisconsin Physicians Service Insurance Corporation.

4. The amended class action complaint groups the class plaintiffs into three categories: 1) the "RICO plaintiffs" consisting of all eleven plaintiffs named in the amended class action complaint; 2) the "ERISA Plaintiffs" consisting of plaintiffs Arthur Davis and Miller Building Systems, Inc. ("MBS"); and 3) the "State Law Plaintiffs" consisting of the four ERISA-qualified employee benefit plans (Carpenter's Health Fund of West Virginia, Employer Teamsters Joint Counsel # 84 Health and Welfare Fund, Northern California General Teamsters Security Fund, and S.E.I.U. Local 74 Welfare Fund), and five individuals (Janet Cotter, Barbara Donnenberg, Mary Gallardo, David Watkins, and Judith White). *See* Amended Class Action Cplt., at ¶¶ 5–7.

5. Specifically, MBS claims that it is a "sponsor and fiduciary of an ERISA plan, that is administered by a third-party administrator ('TPA')." *See* Amended Class Action Cplt., at ¶ 4g.

than were ordered ("upcoding"), and in some cases performed; and 5) SBCL inserted fabricated diagnosis codes to obtain reimbursement from third-party payers ("code jamming").

The plaintiff insurers allege that through this scheme, SBCL effectively substituted its own financially self-interested judgment for the informed, clinical judgment of physicians. The plaintiff insurers further allege that SBCL forced its scheme upon unsuspecting physicians by offering institutional incentives and kickbacks. The incentives included test discounts, hiring physician family members, computer equipment, refrigerators, free phlebotomists' services, office draw sites and other free services, such as writing off STAT (urgent) services which were then billed to third-party payers.

The amended class action complaint alleges that between 1989 and 1995, SBCL engaged in fraudulent billing practices, causing the class plaintiffs to pay inflated charges for clinical laboratory tests. The class plaintiffs claim that "SBCL used its control over the management of the Laboratory Network to engage in a fraudulent scheme with respect to clinical laboratory tests on human tissue, blood or urine specimens, which resulted in the intentional and—systematic:" 1) billing, for medical tests that physicians did not order or intend to order; 2) billing for medical tests that SBCL had intentionally led doctors to believe would not result in additional charges ("add-ons"); 3) billing at full price, for tests that SBCL had represented would be discounted ("selective discounts"); 4) manipulation of the test requisition order forms provided to physicians by SBCL; 5) billing separately for individual test panels, thereby dramatically increasing the cost ("unbundling"); and 6) altering of physician orders for standard tests so that the more expensive medical tests were conducted and paid for by the class plaintiffs ("upcoding").

On November 17, 1998, SBCL filed motions to dismiss the second amended complaint and to dismiss counts I and III of the consolidated amended class action complaint, as well as counts IV, V, and VI of the consolidated class action complaint, to the extent those claims are asserted by the four employee benefit plans defined therein.

On July 2, 1999, the court, *inter alia,* dismissed the plaintiff insurers RICO causes of action, Counts I, II and III. In addition, the court dismissed Count IV with respect to 31 plaintiff insurers. (*See* n. 1 for the 31 plaintiff insurers.)

### STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure states [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties, only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

■■■ The Second Circuit Court of Appeals, in *L.B. Foster Co. v. America Piles, Inc.,* 138 F.3d 81 (2d Cir.1998), stated that "[w]hen the district court has resolved at least one but fewer than all of the claims in an action, Rule 54(b) permits the court to direct the entry of a final judgment 'only upon an express determination there is no just reason for delay.'" *Id.* at 85 (citations omitted). "If the decision 'ends the litigation [of that claim] on the merits and leaves nothing for the court to do but execute the judgment' entered on that claim, then the decision is final," *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1091 (2d.Cir.1992) (citations omitted), and entry of final judgment pursuant to Fed.R.Civ.P. 54(b) is appropriate. "Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification." *Id.* at 1095.

"This power [to enter final judgment] is largely discretionary," *see Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), to be exercised in light of "judicial administrative interests as well as the equities involved," *Id.*, at 8, 100 S.Ct. 1460 and giving due weight to "the historic federal policy against piecemeal appeals." *Id.* (quoting *Sears*, 351 U.S. at 438, 76 S.Ct. 895). *Reiter v. Cooper*, 507 U.S. 258, 265, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

## DISCUSSION

The plaintiffs argue that the court should enter final judgment pursuant to Fed.R.Civ.P. 54(b) because: 1) the court dismissed all three RICO counts, as a matter of law, making the claim ripe for appellate review; and 2) the court's conclusion that 31 plaintiffs were not fiduciaries for purposes of ERISA, thereby dismissing their ERISA claims, is ripe for final judgment and appellate review. In addition, the plaintiffs argue that discovery will continue with the remaining 6 plaintiffs, as to their ERISA claims, and, therefore, appellate review of the RICO and ERISA claims would not unduly delay the litigation. In fact, entry of final judgment would be "more efficient than conducting discovery, having a trial, appealing on the standing issue and then beginning all again if there is a reversal."

The defendant responds that: 1) "the dismissed claims 'stem[ ] from the same factual allegations' as the claims that remain to be litigated ..." (citations omitted), and, therefore, are inextricably intertwined precluding final judgment pursuant to Rule 54(b); and 2) this is not the " 'infrequent harsh case' where there is no just reason for delay" and no undue "danger of hardship or injustice through delay which would be alleviated by immediate appeal." (Citations omitted.)

In the present case, the court determines that there is no just reason to delay entry of final judgment as to Counts I, II and III, the RICO claims. In its July 2, 1999, Ruling on the Defendant's Motion to Dismiss, the court dismissed all RICO claims and concluded "that all of the class plaintiffs' enterprise theories fail as a matter of law ..." p. 24, n. 31. Accordingly, the court has made a final decision, as a matter of law, ending the litigation as to the merits of the RICO claim.

Second, it must be determined if the RICO claims are inextricably intertwined with the remaining fraud claims. As the Second Circuit Court of Appeals stated, "[o]nly those claims 'inherently inseparable' from or 'inextricably intertwined' to each other are inappropriate for Rule 54(b) certification." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1092 (2d Cir.1992). In addition, "the district court's disposition of one or more of the remaining claims ... [cannot] render ... [the appellate court's] opinion advisory or moot." *Id.* (citations omitted). In the present case, the issue to be determined on appeal is whether the plaintiffs' enterprise theories are sufficient to allege a RICO violation. This determination is separate and distinct from the adjudication of the remaining fraud claims. *See Roebuck v. Guttman*, 678 F.Supp. 68 (S.D.N.Y. 1988) (stating that Rule 54(b) should be granted when the legal issue is "a discrete and straightforward legal issue which the Court of Appeals can resolve quickly and which will serve the goal of judicial economy"). The separate nature of the issue involved avoids the possibility that further district court action would render appellate review advisory or moot. Accordingly, there is no just reason for delay for entry of final judgment and, therefore, final judgment should be entered as to Counts I, II and III.

Next, the court concludes that there is no just reason to delay entry of final judgment as to Count IV, the ERISA claim. The court, in its July 2, 1999 Ruling on the Defendant's Motion to Dismiss, the court concluded that 31 of the "plaintiff insurers ... have failed to present specific facts supporting their allegations of fiduciary

status lack standing to sue SBCL under [ERISA]." p. 30–31. Further, the court dismissed the ERISA claims of the 31 plaintiff insurers, with prejudice, having already given the plaintiffs a previous opportunity to cure the deficiencies in the complaint. *See* Ruling on the Defendant's Motion to. Dismiss, June 11, 1998 at 17. Accordingly, the court concludes that it has made a final determination ending the merits of the ERISA claim for 31 plaintiffs.

■ Second, the court must determine whether the 31 plaintiffs' ERISA claims are inextricably intertwined or inseparable from the remaining claims. *See Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d. Cir.1992). Here, the court concluded that the 31 plaintiffs lacked standing to allege an ERISA violation because they were not fiduciaries for purposes of ERISA. Accordingly, the issue to be presented on appeal is whether the 31 plaintiffs have fiduciary status to allege an ERISA violation. This is a separate legal issue not intertwined with the determination of the remaining fraud claims or the remaining six plaintiffs [6] who have sufficient standing to allege ERISA violations. Further, appellate review serves judicial economy in determining the fiduciary status of the dismissed parties early in the litigation, thereby preventing the possibility of a second trial and further appeals. *See Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992); *see generally L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81 (2d Cir. 1998). Accordingly, entry of final judgment is appropriate as to those 31 plaintiffs whose ERISA claims were dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for final judgment (document no. 222) is GRANTED.

6. The remaining six plaintiff insurers who have sufficient standing for an ERISA violation, at this stage of the litigation, are: 1) Aetna Life Insurance Company; 2) Blue Cross of California; 3) Blue Cross and Blue

It is so ordered, this 31st day of March, 2000 at Hartford, Connecticut.

Shield of Florida, Inc; 4) Employers Health Insurance Company; 5) the Guardian Life Insurance Company; and 6) Louisiana Health Services & Indemnity Company, Inc.