**BRISTOL TECHNOLOGY, INC., Plaintiff,**

v.

**MICROSOFT CORPORATION, Defendant.**

**No. CIV.A. 3:98–CV–1657.**

United States District Court, D. Connecticut.

Nov. 3, 2000.

---

**86**

Patrick Lynch, O'Melveny & Myers, Los Angeles, CA, John L. Altieri, Jr., Annette Poblete, Achilles M. Perry, O'Melveny & Myers, New York, NY, Mladen D. Kresic, Kresic & Corleto, Ridgefield, Ct, Anthony L. Clapes, Technology Law Network, Honolulu, HI, for Bristol Tech. Inc.

David B. Tulchin, Michael T. Tomaino, Jr., Marc De Leeuw, Elizabeth P. Martin, Brian T. Frawley, John J. Sullivan, Sullivan & Cromwell, New York, NY, James Sicilian, Day, Berry & Howard, Hartford, CT, Steven J. Aeschbacher, Microsoft Corp., Redmond, WA, Steven W. Thomas, Sullivan & Cromwell, Los Angeles, CA, for Microsoft Corp.

Rachel Olivia Davis, Steven Mark Rutstein, Attorney General's Office, Hartford, CT, Mark F. Kohler, Attorney General's Office, Hartford, CT, for State of Conn.

### RULING ON RULE 54(b) MOTION FOR ENTRY OF JUDGMENT [DKT. NO. 479]

HALL, District Judge.

### I. PROCEDURAL BACKGROUND

This action was commenced in August 1998 by Bristol Technology, Inc. ("Bristol"), a Connecticut corporation primarily owned by the Blackwell family. In its 14 count Complaint, Bristol alleged various theories of violations by Microsoft Corp. ("Microsoft") of the federal and state antitrust laws, and of the Connecticut Unfair Trade Practices Act ("CUTPA"). At the time it filed its complaint, Bristol sought a Preliminary Injunction and expedited dis-covery. The court held a hearing on the Preliminary Injunction Motion and denied it. However, based upon the record in that hearing and its findings, the court scheduled the trial for June 1, 1999.

On January 15, 1999, Microsoft filed its answer and counterclaims [Dkt. No. 110]. Microsoft claimed breach of contract (Count 1), copyright infringement (Count 2), and misappropriation of trade secrets (Count 3). Microsoft filed a Motion to Dismiss, or in the alternative for Summary Judgment on, the antitrust claims, and Bristol filed a Motion for Partial Summary Judgment on its CUTPA claims. See Dkt. Nos. 46 & 165. These were denied by the court. See Dkt. Nos. 95 & 308. However, Microsoft moved to dismiss Count One of its Counterclaim [Dkt. No. 181], which Motion the court granted on May 19, 1999.

The parties engaged in intensive and contested discovery of each other and third parties both before the Preliminary Injunction hearing and after the court's Ruling on the Preliminary Injunction. There were numerous discovery motions and pretrial conferences and motions. Microsoft also filed a Motion for Summary Judgment on Counts Two and Three of its Counterclaim, as did Bristol, and Microsoft also filed a Motion for Summary Judgment on Bristol's antitrust claims. See Dkt. Nos. 160, 169 & 170. The court also ordered the trial of Microsoft's remaining counterclaims severed from the trial of the plaintiff's claims. Microsoft's second and third counterclaims remain pending following the court's denial of cross-motions for summary judgment. See Dkt. No. 475.

Despite motions by Microsoft to continue the trial date [Dkt. Nos. 97 & 146], jury selection was held on May 20, 1999, and evidence commenced on June 3, 1999. The jury returned its verdict on July 16, 1999. The jury found that Bristol had failed to prove its relevant market on each of its antitrust claims. It also did not find that Bristol had proven that Microsoft committed an unfair act or practice under CUTPA ("unfair CUTPA"). The jury did find that

Microsoft had engaged in a deceptive act or practice which had caused Bristol to suffer an ascertainable loss, but awarded Bristol nominal damages of $1.00. *See* Dkt. No. 420.

Post-trial, Bristol filed motions for Permanent Injunction [Dkt. No. 431] and Punitive Damages [Dkt. No. 433], both of which were granted by this court. *See Bristol Tech., Inc. v. Microsoft Corp.*, 114 F.Supp.2d 59 (D.Conn.2000). Bristol also filed a Motion for Award of Attorneys' Fees and Costs [Dkt. No. 442].

Now before the court is Bristol's Rule 54(b) Motion for Entry of Judgment [Dkt. No. 479]. For the foregoing reasons, that motion is granted.

## II. FACTUAL BACKGROUND

Bristol was formed in 1991. Among its earliest product efforts was development of a cross-platform tool that could "port" applications written for Microsoft operating systems so that they could run on other operating systems, specifically various types of UNIX operating systems. In or about 1993, Bristol and Microsoft began negotiation of an agreement ("1994 WISE Agreement"), which was executed on September 21, 1994. This contract was part of a program devised by Microsoft called the Windows Interface Source Environment ("WISE"). The 1994 WISE Agreement licensed source code of certain Microsoft operating systems to Bristol for use in developing its cross-platform products, which products are generally known as "Wind/U." The 1994 WISE Agreement expired on September 21, 1997, although, under the terms of the 1994 WISE Agreement, Bristol is entitled to continue using source code provided to it before that date, with the corresponding obligation to pay royalties.

The scope of the 1994 WISE Agreement is a subject of dispute between the parties. This agreement describes the source code licensed under it as including Windows 3.1 and Windows NT 3.5, and "any Version Releases and Update Releases" thereto during the three-year term of the 1994 WISE Agreement. 1994 WISE Agreement at ¶ 1(w)(iv). These "releases" were defined in the Agreement as any Windows and NT products with a 3 to the left of the decimal point. *Id.* at ¶ 1(q). Thus, Microsoft argues that Windows NT 4 ("NT 4") was not covered by the 1994 WISE Agreement. However, Bristol argues that Microsoft made numerous representations to the effect that NT 4 would be licensed to Bristol.

During the term of the 1994 WISE Agreement, Microsoft shipped three deliveries of portions of NT 4 source code. These deliveries occurred in the period between December 1995 to May 1996 and were each accompanied by an insert which read:

> The enclosed update for Microsoft Windows NT source code is provided to you under the terms of the Source Code Agreement you have signed with Microsoft Corporation. The source code is confidential and proprietary to Microsoft and you may only use the source code for the purpose described in the Source Code Agreement.

Microsoft now claims these, and two other similar subsequent deliveries, were "in error."

On June 3, 1996, Microsoft and Bristol entered into a second agreement, known as the Internet Explorer Source Code Porting Agreement ("IE Agreement"). Pursuant to that agreement, Microsoft granted Bristol a "limited license" to Windows NT 4 Routines. IE Agreement at ¶ 3.1. The Agreement did not grant Bristol a license to any Microsoft technology other than the IE software and the Windows NT 4 Routines. The Agreement defined "Windows NT 4 Routines" as "those portions of the Windows NT 4 source code which are necessary to create a Ported IE . . . and which are identified by name in a written notice by [Bristol] to Microsoft." *Id.* at ¶ 1.3. Bristol never identified any such portions of the Windows NT 4 source

code "which are necessary to create a Ported IE" in a written notice to Microsoft. Under this Agreement, Microsoft retained "all right, title and interest in and to" Windows NT 4 and reserved "[a]ll rights not expressly granted." *Id.* at ¶¶ 3.2, 3.3. The IE Agreement provided that Microsoft's retention of "all right, title and interest in and to" Windows NT 4, and its reservation of "[a]ll rights not expressly granted," would survive termination of the Agreement. *Id.*

Pursuant to the IE Agreement, Microsoft agreed to deliver, within ten days of its execution, source code for its NT 4 operating system and its Internet Explorer browser, and Bristol agreed to attempt to develop a Wind/U product to run the Microsoft Internet Explorer browser on UNIX operating systems. No source code was delivered by Microsoft to Bristol within 10 days of the execution of the IE Agreement.

Subsequent to the signing of the IE Agreement, but not in compliance with its express terms, Microsoft sent two additional shipments of NT 4 source code to Bristol on October 30, 1996 and November 1, 1996. A dispute arose between Microsoft and Bristol concerning each other's performance of the 1996 IE Agreement. On March 5, 1998, the parties executed a settlement agreement ("1998 Agreement"). This 1998 Agreement provided mutual releases for any claims arising out of the IE Agreement.[1]

Bristol placed the CD–Rom–based NT 4 source code that Microsoft had sent to it between December 1995 and November 1996 onto its hard drive, which is internal to Bristol and· password-protected. Bristol also "backed up" copies onto tapes for archival purposes and stored the tapes at its offices in a safe or in a safety deposit box at a local bank. Further, in preparing for a Fed.R.Civ.P. 30(b)(6) deposition in connection with these counterclaims, Bris-

tol analyzed the NT 4 source code and compared it with its Wind/U 4 product to determine what, if any, NT 4 source code it had used in its product. Bristol concedes that approximately 200 lines of NT 4 code called "wssprintf," which code is among the 10 million lines of NT 4, appear in Wind/U 4.

Negotiations between Microsoft and Bristol on a new licensing agreement to replace the 1994 WISE Agreement when it expired in 1997 began at least as early as 1996. They were unsuccessful, and Bristol brought suit. Microsoft then signed a licensing agreement with Bristol's main competitor, Mainsoft. After Bristol failed to prevail on its antitrust claims in this action, it signed the "Mainsoft" version of the licensing agreement. This agreement ("1999 Agreement") contained a release of Bristol as follows:

> The parties acknowledge and agree that Bristol has, prior to the Effective Date of this Agreement, distributed Wind/U Library Product(s) and/or Wind/U SDK Product(s) based in ·part on Microsoft technologies contained in the Current Licensed Software and which technologies were not licensed to Bristol. Microsoft agrees not to sue or seek any remedies against Bristol on account of any such distribution, which distribution (had such Microsoft technologies been included as part of the Prior Licensed Software) was in · compliance with the terms and conditions of the Prior Agreement. Bristol acknowledges and represents to Microsoft that all technologies currently distributed and to be distributed with Wind/U Library Product(s) and Wind/U SDK Product(s) are included within the Current Licenses Software (as set forth in Exhibit A) and/or the Prior Licensed Software, and do not include any Microsoft software or technologies other than the Current Licensed

---

1. The 1998 Agreement also mutually released any claims arising out of an August 27, 1996 Letter Agreement related to the IE project.

Software and the Prior Licensed Software.

1999 Agreement at ¶ 18(b). It is undisputed that any NT 4 source code used in Wind/U products prior to the signing of the 1999 Agreement is within the "Current Licensed Software." or the "Prior Licensed Software."

## III. DISCUSSION

### A. Fed.R.Civ.P. 54(b) Entry of Judgment

Bristol moves for certification of its claims against Microsoft under Fed. R.Civ.P. 54(b). Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b).

The Supreme Court laid out the basic approach to deciding a Rule 54(b) motion for certification in the seminal case *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980):

A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." . . .

Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." . . . It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. . . . This discretion is to be exercised "in the interest of sound judicial administration." . . .

Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." . . .

446 U.S. at 7–8, 100 S.Ct. 1460 (citations omitted). The Court indicated that the factors for the courts to consider included: (1) "whether the claims under review were separable from the others remaining to be adjudicated" and (2) "whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* at 8, 100 S.Ct. 1460 (footnote omitted). The *Curtiss–Wright* Court commented in a footnote that "the [absence] of one of these factors would [not] necessarily mean that Rule 54(b) certification would be improper," but a finding without one of these factors present "would, however, require the district court to find a sufficiently important reason for nonetheless granting certification." *Id.* at 8 n. 2, 100 S.Ct. 1460.

The Second Circuit has more recently restated the factors for a district court to consider in ruling on a motion for Rule 54(b) certification as: (1) "the relatedness of the pending and adjudicated claims," (2) "the factual bases for the claims," and (3) "the effect a decision on the pending claims would have on questions raised on appeal." *FDIC v. Bernstein*, 944 F.2d 101, 108–09 (2d Cir.1991) (citation and internal quotation marks omitted). According to the Second Circuit, "[w]hen the certified claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court the certified claims may be considered separate claims under Rule 54(b)." *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 418 (2d Cir.1989).

The Second Circuit has also stated an alternative test for Rule 54(b) certification, under which, "[t]o be certified under Rule 54(b), an order must possess the degree of finality required to meet the appealability requirements of 28 U.S.C. § 1291." *Kahn v. Chase Manhattan Bank, N.A.*, 91 F.3d 385, 388 (2d Cir.1996) (citation and internal quotation marks omitted). "This degree of finality is defined as a judgment which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* (citation and internal quotation marks omitted).

The Second Circuit has cautioned against the overuse of Rule 54(b) certification, for "[t]he power 'should be used only in the infrequent harsh case' where there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 86 (1998) (citations omitted); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir.1997); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir.1985). The Second Circuit has also, however, sanctioned the use of Rule 54(b) certification "where there are interest[s] of sound judicial administration and efficiency to be served." *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir.1992) (citation and internal quotation marks omitted); *see also Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir.1991).

■ "The determination of whether there is no just reason to delay entry of a final judgment is a matter committed to the sound discretion of the district court." *L.B. Foster*, 138 F.3d at 86 (citations omitted). However, the Second Circuit requires that, "[s]ince the certification is to be reviewed for abuse of discretion, it must be accompanied by a reasoned, even if brief, explanation of the basis for the court's determination that there is no just cause for delay; a certification that is conclusory or merely quotes the words of the Rule is insufficient." *Id.* (citations omitted). Accordingly, the Court of Appeals requires compliance with a three-prong requirement "to permit entry of a final, immediately appealable Rule 54(b) judgment":

> (1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make "an express determination that there is no just reason for delay" and expressly direct the clerk to enter judgment.

*Advanced Magnetics*, 106 F.3d at 16 (quoting *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir.1992)).

■ The court begins by noting, as discussed above, that there are clearly multiple claims present in this case. Bristol filed a fourteen-count complaint against Microsoft in August 1998, and Microsoft filed an Answer with three counterclaims against Bristol in January 1999. *See* Dkt Nos. 1 & 110. In May 1999, the court ruled that the counterclaims would not be tried at the same time as Bristol's claims, the latter of which were tried and went to a verdict in July 1999. The court severed the counterclaims because, although in-

volving the same parties, the counterclaims are based, exclusive of background facts, on separate proof and concern different legal theories.

Second, the court finds that Bristol's claims have now been decided to the degree of finality required to meet the appealability requirements of 28 U.S.C. § 1291, i.e., the jury verdict and the court's decision on Bristol's request for a permanent injunction and punitive damages ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.[2] The court previously denied Microsoft's Request for Entry of Judgment [Dkt. No. 421], pursuant to Fed.R.Civ.P. 58, filed immediately after the jury verdict was rendered, on the ground that it was premature because Bristol's requests for a permanent injunction and punitive damages were still pending. Following the court's decision on those requests, *Bristol Tech.*, 114 F.Supp.2d 59, the entry of judgment is no longer premature.

Finally, the court finds that there is no just reason for delay in the entry of judgment. As a result of the jury's finding that Microsoft committed a deceptive act or practice in violation of CUTPA, the court has found that a permanent injunction should enter "to prevent continued public deception," a deception which the court found to be sufficiently reckless to warrant the imposition of a $1 million punitive damages award against Microsoft. *Bristol Tech.*, 114 F.Supp.2d at 87–89, 99. Because this injunction cannot take effect until judgment has entered on Bristol's claims against Microsoft, the present posture of this litigation presents some danger of injustice through delay that would be alleviated by immediate appeal.

Moreover, the court finds that Rule 54(b) certification of Bristol's claims will serve the interests of sound judicial administration and efficiency. Bristol's claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court on Microsoft's counterclaims. The court notes that Bristol admits that "[t]he unresolved counterclaims present the risk of a second appeal involving closely-related facts" and that "Bristol believes that trial of the counterclaims will necessarily include reference to the findings concerning Microsoft's deceptive conduct with regard to WISE." Bristol Technology's Memo. of Law in Support of Its Motion for Entry of Judgment Pursuant to Rule 54(b) (Dkt. No. 480) at 2. While the court does not necessarily agree with Bristol, certainly there is some overlap in the factual bases between the pending and adjudicated claims. The WISE Program, in which Bristol and Microsoft were partners, and which was at the core of Bristol's CUTPA and antitrust claims, serves as the back drop for Microsoft's counterclaims for copyright infringement and a violation of trade secret law.

The factual overlap, however, extends only insofar as Microsoft's trade secrets counterclaim theory is that Bristol breached its confidentiality obligations by improperly using Windows NT 4 source code under the IE Agreement, and Bristol's response is that its use was consistent with its rights under the 1994 WISE Agreement it entered into with Microsoft. Microsoft's claim is based on the contention that Bristol used the code in ways not permitted by the IE Agreement and used the code after any rights to such use were terminated by the 1998 Agreement. The scope of the WISE Agreement and general background on the WISE Program are thus relevant to the counterclaims. However, a trial of the counterclaims does not involve the same factual issues as Bristol's successful CUTPA claim, i.e., whether Microsoft engaged in unfair and deceptive acts or practices based on false statements, promissory estoppel, and antitrust violations. *See generally Bristol Tech.*, 114 F.Supp.2d 59 (describing the basis for

---

2. The court has also ruled on Bristol's request for attorneys' fees under CUTPA, Conn. Gen. Stat. § 42–110g(d). *See* Ruling on Motion for Attorneys' Fees & Costs (Dkt. No. 489).

Bristol's claims): Dkt. No. 475 (describing the basis for Microsoft's counterclaims). Indeed, the court notes that, by stipulation, the court instructed the jury not to consider any evidence of the dispute between Bristol and Microsoft as to the circumstances of the deliveries of source code to Bristol which form the factual basis of Microsoft's counterclaims. *See, e.g.,* Dkt. No. 306 at 1–2.

Moreover, the legal issues on appeal from the antitrust and CUTPA claims will not duplicate the questions that would arise in an appeal from the counterclaims, which arise from copyright and trade secret law. Additionally, a decision on the pending counterclaims should have no effect on any questions raised on an appeal of Bristol's antitrust and CUTPA claims.

Furthermore, the court notes that a month after the jury verdict, Microsoft argued that, as the court ruled in severing the counterclaims from Bristol's claims for trial, its "counterclaims are factually and legally distinct from Bristol's claims" such that "[s]eparate appeals on Bristol's claims and Microsoft's counterclaims (if appeals were filed) would thus not result in redundant appellate review." Dkt. No. 435 at 31. Microsoft now reverses its position on the ground that, "given the passage of time, there is no reason why the entry of judgment should not now await resolution of all the claims in this case." Response to Bristol's Rule 54(b) Motion for Entry of Judgment (Dkt. No. 484) at 1.

The court cannot agree with Microsoft's reason for opposing the entry of judgment at this time. The only circumstances which have significantly changed since the court denied Microsoft's Rule 58 request for entry of judgment [Dkt. No. 421] argue in favor of Rule 54(b) certification: the court has ruled upon Bristol's request for a permanent injunction and punitive damages. The court does not expect that an appeal of Bristol's claims with Microsoft's counterclaims would result in any significant conservation of judicial resources, nor

does the court expect that clearing the way for the parties to file post-trial motions, if any, on Bristol's claims prior to the trial of Microsoft's counterclaims will produce any procedural inefficiencies.[3] In short, the court severed the counterclaims from the trial of Bristol's claims because these causes of action involve genuinely distinct factual and legal questions. In such an instance, the court finds it appropriate to certify Bristol's claims as separate claims under Rule 54(b).

### B. Fed.R.Civ.P. 54(d)(1) Award of Costs

■ In its Response to Bristol's Rule 54(b) Motion for Entry of Judgment [Dkt. No. 484], Microsoft notes that, "[i]f the court is inclined to order the entry of final judgment pursuant to Rule 54(b), Microsoft respectfully requests that the Court rule that Microsoft is the prevailing party pursuant to Rule 54(d)(1), and is entitled to costs pursuant to that Rule and the Local Rules of this Court." *Id.* at 2. Microsoft asserts that, "[i]n making the 'prevailing party' determination, this Court should consider the trial time devoted to and damages sought on all of the claims, and view the case 'as a whole.'" *Id.* (citations omitted). Microsoft argues that "Bristol brought fourteen claims, thirteen of which were rejected by either the Court or the jury, and sought a $263 million damage award, which was soundly rejected by the jury." *Id.* Thus, Microsoft concludes that "Microsoft is clearly the prevailing party in this case . . ., and therefore entitled to most or all of its costs." *Id.* (citations omitted).

The court declines Microsoft's request to award it costs under Fed.R.Civ.P. 54(d)(1). Rule 54(d)(1) provides:

Costs Other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of

---

**3.** The trial on Microsoft's counterclaims is scheduled for March 2001.

course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

This rule explicitly grants discretion to the court to decline to award costs as provided under the federal taxable costs statute. *See* Fed.R.Civ.P. 54(d)(1); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Cosgrove v. Sears, Roebuck, & Co.*, 191 F.3d 98, 102 (2d Cir.1999). Under Rule 54(d), however, there is a presumption that a prevailing party will be awarded its taxable costs. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981); *Mercy v. County of Suffolk*, 748 F.2d 52, 54 (2d Cir.1984).

The analysis of whether a plaintiff is a prevailing party is the same for purposes of Rule 54(d) and 42 U.S.C. § 1988. *See Farrar v. Hobby*, 506 U.S. 103, 118–20, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring); *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Tunison v. Cont'l Airlines Corp., Inc.*, 162 F.3d 1187, 1189 (D.C.Cir.1998). Under this analysis, "[f]or a plaintiff to be considered a 'prevailing party,' ... he need not have succeeded on 'the central issue' in the case, ..., and need not have 'obtain[ed] the primary relief sought' ...." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir.1998) (citations omitted). "It is sufficient that the plaintiff succeeded on any significant issue in [the] litigation, ... regardless of the magnitude of the relief obtained, ..., if he received actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff ...." *Id.* (citations and internal quotation marks omitted). Indeed, "[i]t is axiomatic that a plaintiff need not sustain his entire claim to be regarded as the prevailing party." *Lodges 743 & 1746 v. United Aircraft Corp.*, 534 F.2d 422, 448 (2d Cir.1975) (citation omitted). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12, 113 S.Ct. 566.

Under this prevailing party standard, "a plaintiff who wins nominal damages is a prevailing party." *Id.* at 112, 113 S.Ct. 566. This is because "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113, 113 S.Ct. 566.

The court concludes that, in this case, Bristol, and not Microsoft, is the prevailing party for purposes of Rule 54(d). Bristol obtained an enforceable monetary judgment, as well as injunctive relief, against Microsoft that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Moreover, although the Second Circuit has observed that, under the prevailing party standard, "fee awards are not appropriate where, having failed to capture compensatory or punitive damages, a plaintiff wins only 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated,'" here the plaintiff has been awarded punitive damages of $1,000,000 and injunctive relief. *Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir.1996) (quoting *Farrar*, 506 U.S. at 114, 113 S.Ct. 566).

Microsoft urges the court to consider several decisions holding that, in conducting a Rule 54(d) prevailing party analysis, "the case must be viewed as a whole to determine who is the prevailing party." *Studiengesellschaft Kohle v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir.1983);

see also *Schultz v. United States,* 918 F.2d 164, 165–66 (Fed.Cir.1990); *Scientific Holding Co., Ltd. v. Plessey Inc.,* 510 F.2d 15, 28 (2d Cir.1974). This case law in no way alters the court's analysis or its conclusion. In fact, the decisions cited by Microsoft directly support the proposition that a party need not succeed on all its claims or counterclaims to be considered a prevailing party. *See e.g., Schultz,* 918 F.2d at 165 ("A prevailing party typical[ly] ... succeed[s] on any significant issue in litigation which achieves some of the benefits the part[y] sought in bringing suit." (citation and internal quotation marks omitted)); *Studiengesellschaft,* 713 F.2d at 131 ("A party need not prevail on all issues to justify an award of costs." (citations omitted)).

Finally, the court rejects Microsoft's suggestion that the prevailing party analysis should be governed by the relationship between Bristol's successful deceptive CUTPA claim and its unsuccessful claims against Microsoft. "The question of whether a plaintiff is a 'prevailing party' is a threshold question that is separate from the question of the degree to which the plaintiff prevailed." *LeBlanc–Sternberg,* 143 F.3d at 757 (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933); *see also Pino,* 101 F.3d at 237 ("Determining whether an award of attorney's fee is appropriate requires a two-step inquiry." (citing *Farrar,* 506 U.S. at 109, 113 S.Ct. 566)). Moreover, although "[a] plaintiff who has 'prevail[ed]' in the litigation has established only his eligibility for, not his entitlement to, an award of fees," *LeBlanc–Sternberg,* 143 F.3d at 758 (citing *Farrar,* 506 U.S. at 114, 113 S.Ct. 566, and *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933), there is a presumption under Rule 54(d) that a prevailing party will be awarded its taxable costs, *Delta,* 450 U.S. at 351, 101 S.Ct. 1146; *Mercy,* 748 F.2d at 54.

For the reasons stated above, the court concludes that Bristol, not Microsoft, is the prevailing party in this litigation for purposes of Rule 54(d)(1). As such, the court holds that Bristol is presumptively entitled to an award of its taxable costs, and finds no reason to overcome that presumption.

## IV. CONCLUSION

For the reasons discussed above, the court finds it appropriate to certify Bristol's claims [Dkt. No. 1] as a final judgment pursuant to Fed.R.Civ.P. 54(b). Because the court finds that Bristol and not Microsoft is the "prevailing party" in this litigation, the court also declines to award Microsoft its taxable costs under Fed.R.Civ.P. 54(d)(1).

Bristol's Rule 54(b) Motion for Entry of Judgment [Dkt. No. 479] is granted. The clerk is directed to enter judgment on the jury verdict [Dkt. No. 420] and the court's Ruling on Bristol Technology's Motion for Award of Punitive Damages and Motion for Permanent Injunction [Dkt. No. 477], as modified by the court's Ruling on Motion for Reconsideration [Dkt. No. 488].

**SO ORDERED.**